## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MICHELLE A. GEERY,

    PLAINTIFF,

v.

ETHICON, INC. and
JOHNSON & JOHNSON,

    DEFENDANTS.

CIVIL ACTION NO.
6:20-cv-01975-RBD-LRH

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56(a), the Local Rules, and this Court's Case Management and Scheduling Order (Doc. 101), Defendants Ethicon, Inc. and Johnson & Johnson file this motion for partial summary judgment on Plaintiff's claims for failure to warn (Count I, III); fraud- and misrepresentation-based claims (Counts VI – fraud, Count VII – fraudulent concealment, Count VIII – constructive fraud, Count IX – negligent misrepresentation); negligent infliction of emotional distress (Count X); violation of consumer protection laws (Count

XIII); and gross negligence (Count XIV).[1]   As explained in the Memorandum of Law below, and as supported by the exhibits attached hereto, the above claims are subject to summary judgment because they are not cognizable under Florida law or, alternatively, Plaintiff lacks evidence to support such claim.

## STATEMENT OF UNDISPUTED FACTS

**A.   Plaintiff is a Florida resident and underwent treatment in Florida.**

1.     Plaintiff Michelle Geery is a resident of Florida.  Compl., Doc. 1, 4; Ex. 1: Third Am. Pl. Fact Sheet, at 2.

2.     Plaintiff underwent surgery with Ethicon mesh products in Florida, and she had most of her subsequent medical care and treatment in Florida.  Doc. 1, Short Form Compl., ¶4, 11; Third Am. Pl. Fact Sheet, at 2, 5-6, 8-10.

**B.   Plaintiff presented to Dr. Virgil Davila in September 2005, suffering from pelvic organ prolapse and stress urinary incontinence.**

3.     Plaintiff was first seen by Dr. Virgil Davila, an OB/GYN, on September 19, 2005.  Ex. 2: Virgil Davila, M.D.  Dep. (July 18, 2019), at 74:3-6.

4.     Plaintiff provided a medical history to Dr. Davila and explained that she had undergone a pelvic repair surgery in the past, which had failed and resulted

---

[1]   Plaintiff checked the box on her Short Form Complaint to assert a "claim" for punitive damages (Count XIII) and "discovery rule and tolling" (Count XVIII), but those are not independent claims; a request for punitive damages is a measure of damages, and the discovery rule is a doctrine that *plaintiffs* must invoke and establish to find their claims timely filed.

in Dr. Davila later finding "a really tight area in the urethral area" and "a lot of scar tissue in that area."  Davila Dep. at 74:7-11; 75:16-76:16; 108:17-12; 111:18-23 (Q: "Fair to say that by this point, in September 2005, her prior anterior and posterior repair surgeries had failed and her cystocele and her rectocele had returned?" A: "That's correct."); 121:3-122:14.

5.     Dr. Davila performed an examination of Plaintiff at her September 25, 2006, visit; he diagnosed her with a "significant" "stage 3" cystocele, meaning that her bladder was protruding out of her vagina.  Davila Dep. at 74:14-16; 110:4-111:8.

6.     Plaintiff was also diagnosed with a vaginal vault prolapse and a grade 1 to grade 2 rectocele—meaning her rectum had collapsed into her vagina.  Davila Dep. 74:17-24; 111:10-17.

7.     Plaintiff had occasional leaking of urine.  Davila Dep. 74:25-75:3; 111:24-112:5.

8.     Plaintiff also reported that she was having difficulty urinating and that it took her a long time to urinate. Davila Dep. 112:6-10.

C.   **Plaintiff opted for surgical correction, and Dr. Davila implanted the Prolift and TVT-O devices on May 16, 2006.**

9.   Dr. Davila counseled Plaintiff that, to address her pelvic and urinary symptoms, she could opt to do nothing as her conditions were not life-threatening. Davila Dep. 111:14-113:13.

10.   Dr. Davila also explained surgical options to Plaintiff.  Davila Dep. 113:10-115:4.

11.   Plaintiff opted to proceed with a surgical procedure because her pelvic organ prolapse and urinary problems were impacting her life.  Davila Dep. 113:10-19.

12.   On May 16, 2006, Dr. Davila surgically implanted two Ethicon mesh medical devices for Plaintiff's treatment: Prolift for her pelvic organ prolapse, and TVT-O for her urinary problems.  Short Form Compl., Doc. 1, ¶6, 8-12; Third Am. Pl. Fact Sheet at 5.

D.   **Dr. Davila learned about the risks and safety of both the Prolift and TVT-O devices from multiple sources and found both devices to be safe and effective.**

13.   By the time of Plaintiff's implantation surgery in May 2006, Dr. Davila had more than 10 years of experience with treating both pelvic organ prolapse and stress urinary incontinence.  Davila Dep. 83:19-84:1; 92:2-83:9; 101:14-103:14.

14.    At the time of his deposition, Dr. Davila had performed "close to a thousand" TVT-O procedures.  Davila Dep. 85:19-85.

15.    Plaintiff's designated case-specific expert, Dr. Bruce Rosenzweig, identifies that Plaintiff has sustained the following injuries:[2] "the need for mesh excision procedures, recurrent SUI urinary frequency and nocturia, pelvic pain, vaginal pain, voiding dysfunction, and dyspareunia."  Ex. 3: Case Specific Expert Report of Bruce Rosenzweig, M.D. (May 24, 2019), at 17.  Yet Dr. Davila—based upon his education and training, review of medical literature, discussions with colleagues and clinical experience (Davila Dep. at 102:7-103:14)—was already aware at the time of Plaintiff's implantation surgery of each of these specific risks and more.    (Davila Dep. at 94:6-100:13; 103:8-104:2, 105:1-106:12, 108:17-109:19, 119:1-6.)

16.    At the time of Plaintiff's surgery in May 2006, Dr. Davila found the TVT-O to be an effective and safe treatment for stress urinary incontinence; he had achieved good clinical outcomes for his patients; and he found that the benefits of the TVT-O outweighed the risks.  Davila Dep. 88:24-89:14.

---

[2]    Plaintiff identified a much longer list of stated injuries, but these are the only injuries for which her designated expert, Dr. Rosenzweig, offers an opinion.  Dr. Rosenzweig's opinions are subject to a separately filed motion to exclude.

17.     Prior to Plaintiff's surgery in May 2006, Dr. Davila had reviewed medical literature on the safety and efficacy of polypropylene meshes for the treatment of stress urinary incontinence, and found the literature supported their use.  Davila Dep. 89:15-25.

18.     Dr. Davila used the Prolift device, where he had a higher cure rate for anterior prolapse than an anterior colporrhaphy, from 2005 through 2007.  Davila Dep. at 87:2-13; *id*. at 87:16-20 (testifying that by the time of Plaintiff's surgery in 2006, he had performed about 20 to 30 Prolift surgeries).

19.     Dr. Davila experienced good clinical outcomes with the Prolift in treating his patients' pelvic organ prolapse. Davila Dep. 90:10-14.

20.     At the time of Plaintiff's surgery in 2006, Dr. Davila's clinical experience and the medical literature showed that the Prolift had an acceptable risk/benefit profile, supporting the device as an acceptable treatment for prolapse. Davila Dep. 90:15-91:8.

21.     Dr. Davila followed his patients who had had Prolift implanted for a number of years, and the vast majority did not experience any complications from the device.  Davila Dep. 90:1-9.

E.     **Dr. Davila stands by his decision to have used the Prolift and TVT-O devices for Plaintiff's treatment.**

22.    Dr. Davila stands by his decision to use the Prolift and TVT-O devices for Plaintiff's treatment in 2006. Davila Dep. at 46:12-20; 47:12-48:7; 83:2-18; 145:5-19 (reaffirming that he stands by his decision to use Ethicon's products for Plaintiff's treatment as reasonable and appropriate).

23.    Nothing in Plaintiff's counsel's questioning of Dr. Davila changed his belief that the TVT and Prolift devices were safe and effective choices for Plaintiff. Davila Dep. at 81:24-82:25; 83:2-18.

## LEGAL MEMORANDUM

I.     **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

II.    **Choice of law: Florida law applies to Plaintiff's substantive claims.**

This Court, sitting in diversity, applies the choice of law test of Florida, the forum state. Florida applies the "most significant relationship" test of Sections 145 and 146 of the Restatement (Second) of Conflicts of Law in personal injury actions. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

7

Plaintiff previously agreed that Florida law applies to her substantive claims. *See* Doc. 51, Pl. Resp. to Defs.' Mot. for Summ. J., at 6.

### III.   Plaintiff conceded several claims.

While the case was in the MDL, Defendants moved for partial summary judgment.  Doc. 43-44.  In Response (Doc. 51), Plaintiff stated that she would not pursue the following claims.  Therefore, summary judgment should be entered.

- Manufacturing Defect (Count I (Negligence) to the extent based on manufacturing defect; Count II (Manufacturing Defect–Strict Liability)).

- Strict Liability-Defective Product (Count IV).

- Breach of Implied Warranty (Count XI).

- Breach of Express Warranty (Count XII).

- Unjust Enrichment (Count XV).

Accordingly, the following claims remain: failure to warn (Count I – negligence, and Count III – strict liability); design defect (Count I – negligence, and Count V – strict liability); fraud- and misrepresentation-based claims (Counts VI – fraud, Count VII – fraudulent concealment, Count IX – negligent misrepresentation); negligent infliction of emotional distress (Count X); violation of consumer protection laws (Count XIII); and gross negligence (Count XIV).

**IV.   Several Remaining Claims are Subject to Summary Judgment.**

Several of Plaintiff's remaining claims cannot withstand summary judgment. As discussed below, these claims are not cognizable under Florida law and/or Plaintiff lacks evidence that would raise a genuine dispute of material fact on the essential elements of those claims.

**A.   Plaintiff lacks causation for her Failure to Warn claim (Count I, III).**

    **(1)   Florida law, which follows the learned intermediary doctrine, requires Plaintiff to establish causation between an alleged defect in the warnings and her stated injuries.**

"Florida law provides that a drug manufacturer's duty to warn is 'directed to the physician rather than the patient.'" *E.g., Small v. Amgen, Inc.,* 723 F. App'x 722, 724 (11th Cir. 2018). "The rationale for this doctrine is that the prescribing physician, who serves as a 'learned intermediary,' is in the best position to weigh 'potential benefits against the dangers in deciding whether to recommend the drug to meet the patient's needs.'" *Id.* at 724-25 (citing *Felix v. Hoffmann-LaRoche, Inc.*, 540 So.2d 102, 104 (Fla. 1989)).

Consistent with the learned intermediary doctrine, to succeed on a failure to warn claim under Florida law, "a plaintiff must show (1) that the product warning was inadequate; (2) that the inadequacy proximately caused her injury; and (3) that she in fact suffered an injury from using the product." *Salinero v. Johnson &*

*Johnson,* 400 F. Supp. 3d 1334, 1344 (S.D. Fla. 2019); *Hoffmann-La Roche Inc. v. Mason*, 27 So. 3d 75, 77 (Fla. 1st DCA 2009)).

"[A]s to the causation element, in cases involving medical devices, 'a plaintiff must show that **her treating physician would not have used the product had adequate warnings been provided**.'" *Salinero,* 400 F. Supp. 3d at 1351-52 (citations omitted; emphasis added); *see also, e.g., Pringle v. Johnson & Johnson*, No. 13-81022-CIV, 2020 WL 4501834, at *4 (S.D. Fla. Jan. 30, 2020) ("[t]he burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff.") (citations omitted).[3]

It is the physician's decision to still prescribe the device that can also cut off the causation chain and require the granting of summary judgment.  Below are representative cases applying Florida law that demonstrate this principle, including cases specific to pelvic mesh products:

---

[3]   As the district court explained in its order granting summary judgment in *Colville v. Pharmacia & Upjohn Co. LLC*, 565 F. Supp. 2d 1314, 1322 (N.D. Fla. 2008) (citations omitted):

> In order to establish a prima facie case in this action, Florida law requires Plaintiff to prove by a preponderance of the evidence, with "reasonable medical probability," that Defendant's alleged negligent failure to warn was the proximate cause of Plaintiff's injury. "In other words, plaintiffs must show that is 'more likely than not' that the defendant's act was a substantial factor in bringing about the injury." "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

*Small v. Amgen, Inc.,* 134 F. Supp. 3d 1358, 1371–72 (M.D. Fla. 2015), *aff'd,* 723 F. App'x 722 (11th Cir. 2018): granting summary judgment for defendant-manufacturer on failure to warn claim and holding, in part, that "[a]s to her decision to resume Ms. Small's treatment with Enbrel in 2009, [**the prescribing physician] testified that her decision would not have been altered by additional warnings regarding the risk of asymptomatic infections**."

*Salinero v. Johnson & Johnson,* 400 F. Supp. 3d 1334, 1351-52 (S.D. Fla. 2019): in product liability case involving an Ethicon pelvic mesh product, granting summary judgment to Ethicon where "there is no evidence beyond Plaintiffs' conjecture and speculation to cast doubt on Dr. Sepulveda's testimony that he believed that he was fully apprised of the risks of implanting Artisyn Mesh—including the risk of fistula formation, —and **still would have chosen to implant it in Mrs. Salinero anyway**. . . .[and a] **revised [Instructions for Use] would not have changed his decision to treat Mrs. Salinero's POP with Artisyn Mesh**. This testimony shows a break in the causal chain between Defendants' IFU warnings to Dr. Sepulveda and Dr. Sepulveda's treatment decision."

*Mubita v. Bos. Sci. Corp.,* No. 2:13-CV-11955, 2015 WL 5838515, at *4–5 (S.D.W. Va. Oct. 5, 2015): in case involving pelvic mesh (MDL proceedings), applying Florida law and granting defendant-manufacturer's motion for summary judgment; holding that "**[w]ithout any indication that he would not have implanted the Obtryx had he been given such a warning, the plaintiff cannot establish proximate causation**."

*Oliver v. Bos. Sci. Corp.,* No. 2:13-CV-01736, 2015 WL 5838506, at *6 (S.D.W. Va. Oct. 5, 2015): in MDL proceedings, granting pelvic mesh manufacturer's motion for summary judgment on failure to warn, and holding that where "**without any indication that he would not have implanted the product had he been given such a warning, the plaintiff cannot establish proximate causation**."

*Hoffmann-La Roche Inc. v. Mason,* 27 So. 3d 75, 77 (Fla. Dist. Ct. App. 2009): in product liability case involving allegations of irritable bowel disorder caused by Accutane, granting summary judgment to the defendant-manufacturer where the prescribing physician testified

that "**even if the warning label contained all of the information suggested by Appellee's expert, he would still have prescribed the medication for Appellee**. Thus, any inadequacies in Accutane's warning label could not have been the proximate cause of Appellee's injury."

Beyond the above cases applying Florida law, the Eleventh Circuit Court of Appeals, applying Georgia law—which, just like Florida law, applies the learned intermediary doctrine and requires the same proof to establish causation—recently affirmed the district court's grant of summary judgment in a pharmaceutical case in *Hubbard v. Bayer HealthCare Pharm. Inc.*, 983 F.3d 1223 (11th Cir. 2020).  In *Hubbard*, the court explained that "even when viewed in the light most favorable to the [plaintiffs], the evidence does not raise a genuine issue of material fact and that Bayer is entitled to final summary judgment as a matter of law," because the prescribing physician testified that "even when provided with the most current research and FDA mandated warnings, as well as the information found in Bayer's updated 2012 Beyaz label, **he would still have prescribed Beyaz to Karen Hubbard**." *Id.* at 1233 (emphasis supplied). Based on the physician's testimony, the Eleventh Circuit affirmed the district court's finding that "[t]he causal chain is therefore broken, and the Hubbards cannot establish proximate cause." *Id.*

12

(2)   **Plaintiff lacks any evidence that her implanting surgeon would not have chosen the Prolift and TVT-O products had there been different warnings.**

Like the cases listed above, summary judgment is required here because Plaintiff lacks relevant, material proof of the essential element of causation.[4]   It bears repeating that the duty to warn of risks associated with the products ran *only* to Dr. Virgil Davila, Plaintiff's implanting surgeon; there is no duty to warn Plaintiff herself.  *See also, e.g., Beale v. Biomet, Inc*., 492 F. Supp. 2d 1360, 1371-73 (S.D. Fla. 2007) (under Florida law, the duty of the manufacturer of a prescription drug or device runs to the physician rather than the patient); *Baker v. Danek Med*., 35 F. Supp. 2d 875, 881 (N.D. Fla. 1998) ("manufacturers of prescription medical products have a duty only to warn physicians, rather than patients, of the risks associated with the use of a product").  Defendants emphasize this because Plaintiff's response may point to evidence about whether *she* (i.e., Plaintiff) would have chosen the product—but that is irrelevant and immaterial to this inquiry, because the learned intermediary doctrine applies.  Plaintiff will also presumably try to point to testimony of Dr. Davila, where Plaintiff's counsel

---

[4] Defendants are not moving for summary judgment regarding Plaintiff's failure to prove the warnings were inadequate.  Instead, the sole ground for summary judgment on the failure to warn claim is Plaintiff's inability to raise a genuine dispute of material fact on the essential element of causation.  Defendants point this out because Plaintiff, in her Response in the MDL, devoted much argument to whether the warnings were adequate.  Any such argument is a red herring, as adequacy of the warning is simply not an issue presented to the Court in this motion.  Plaintiff's lack of proof of causation, alone, is dispositive of this claim.

elicited answers about whether he would have liked to have known certain information and/or whether he would have passed along that information to his patients—but this is inadmissible, immaterial, irrelevant, and speculative. *See, e.g., Mubita*, 2015 WL 5838515, at *5 (granting summary judgment even where the prescribing physician testified that he "'possibly' would have informed his patients had he known about the [additional] warning," but would not have changed his decision to implant the device). What a prescribing physician, in hindsight, would have liked to have known and/or what information he may have shared with his patient is not *material* to the causation inquiry on a motion for summary judgment. Instead, the only issue under Florida law is **whether Plaintiff can meet her burden: to come forward with evidence to show that, had there been different warnings in the Prolift and TVT-O IFUs, Dr. Davila would have changed his treatment decision to use those two products for Plaintiff's treatment at the time of her May 2006 implantation surgery**. *See* authority cited *supra*.

Plaintiff cannot satisfy her burden. To the contrary, Dr. Davila testified that his decision to use both the Prolift and TVT-O for Plaintiff was reasonable and appropriate and that he stands by this decision:

> Q.    So when you mentioned at the time, you know, you thought this was a good -- a good option, have you learned information

since then that might cause you to think there were better options?

A.    **I think at the time it was the right choice and I think at the time for many patients it was the right choice, and I believed that because I was trained well and I was comfortable doing it, I think my patients did well,** but I can see how if somebody is not trained well or somebody who doesn't have any experience, it may not be the right choice.

\*\*\*

Q.    If, as it turns out, Ms. Geery has had three mesh removal surgeries, including one as recently as 2017, and currently undergoes pelvic floor therapy and pain management, looking back with what you know now, unfortunately in hindsight, was the Prolift the best device for her for her prolapse?

A.    **Looking back, she had issues, you know, but, you know, any type of surgery you can have issues, unfortunately, we have no way of predicting that, but I think at the time it seemed like a viable option for her.**

Q.    Sure. Yeah, **at the time, based upon what you knew, it was the option that you recommended to her; is that fair**?

A.    **Correct. Yeah.**

Q.    Okay. And that's based upon what you knew about the risk profile at the time; is that fair?

A. That's fair, yeah.

Davila Dep. at 46:12-20; 47:12-48:7 (emphasis added; objections omitted). Not only does Dr. Davila stand by his decision in May 2006 to use the two products for Plaintiff's treatment, he also testified that nothing in Plaintiff's counsel's questioning changed his testimony:

Q.    Doctor, let me -- let me cut to the chase here. In your practice did you find TVT-O to be a safe and effective treatment option for stress incontinence in your patients?

A.    Yes.

Q.    And the TVT-O, you would agree, was a reasonable and appropriate choice to treat Ms. Geery's stress incontinence in 2006?

A.    Correct.

Q.    **Do you stand by your recommendation and decision to use TVT-O to treat Ms. Geery's stress incontinence in 2006?**

A.    **Yes**.

Q.    **And nothing Plaintiff's counsel discussed with you changed that, correct**?

A.    **No**.

Q.    In other words, yes, correct?

A.    **Correct**.

Q.    And likewise, at the time in 2016 [sic: 2006], it was reasonable and appropriate to use Prolift to treat Ms. Geery's pelvic organ prolapse which involved the collapse of both her bladder and her rectum into her vagina?

A.    Yes.

Davila Dep. at 81:24-82:25 (emphasis added; objection omitted); *see also id*. at 145:5-19 (reaffirming that he stands by his decision to use Ethicon's products for Plaintiff's treatment as reasonable and appropriate).   He continued:

Q.    And was that decision by you to use Prolift to treat her prolapse in 2006 supported by both the medical literature at the time and by your own clinical experience with Prolift?

A.     Yes.

Q.     And **do you stand by your decision to use Prolift to treat Ms. Geery's pelvic organ prolapse in 2006**?

A.     **Yes**.

Q.     **And nothing Plaintiff's counsel said to you today changes that, right?**

A.     **No**.

Q.     **In other words, it does not, correct?**

A.     **It does not**.

Davila Dep. at 83:2-18 (emphasis added; objection omitted).  What is more, at the time of Plaintiff's surgery in May 2006, Dr. Davila was already aware of the risk of the complications Plaintiff's designated case-specific expert, Dr. Bruce Rosenzweig, identifies that Plaintiff has sustained.  *See* Davila Dep. at 94:6-100:13; 103:8-104:2, 105:1-106:12, 108:17-109:19, 119:1-6.

Even beyond the above, what is perhaps most critical (and dispositive) is what Plaintiff's counsel did *not* elicit. There is no testimony by Dr. Davila that, had there been other warnings in the Prolift and TVT-O IFUs, he would have changed his treatment decision for Plaintiff.  Absent proof on that essential item, summary judgment must be entered on Plaintiff's failure to warn claim.  As the district court explained in several cases cited above including *Salinero*, "in cases involving medical devices, 'a plaintiff must show that her treating physician would not have

17

used the product had adequate warnings been provided.'"  *E.g., Salinero*, 400 F. Supp. 3d at 1344-45.[5]  Plaintiff has failed to do so.

For these reasons, Plaintiff lacks evidence on the essential element of causation, and her failure to warn claim is subject to summary judgment.

### B.    Plaintiff's fraud and misrepresentation claims fail because they are not cognizable and, alternatively, lack proof of causation.

Plaintiff also cannot sustain her claims for fraud (Count VI), fraudulent concealment (Count VII), constructive fraud (Count VIII), negligent misrepresentation (Count IX), or consumer fraud (Count XIII).

First, Plaintiff's fraud- and misrepresentation-based claims are not cognizable.  As a matter of law under Florida's learned intermediary doctrine, any representations were made only to the implanting surgeon—not to Plaintiff.  The Florida Supreme Court recognizes the learned intermediary doctrine in cases where the product (here, a medical device) may only be prescribed and implanted by a licensed physician.  *See Felix*, 540 So. 2d at 105 (Fla. 1989).  In these cases, "a manufacturer of prescription drugs or products discharges its duty to warn by

---

[5]  *See also Hubbard*, 983 F. 3d at 1233 (affirming summary judgment on failure to warn claim; explaining that "[m]ost importantly, Dr. Rowley unambiguously testified that he views his December 2011 decision to prescribe Beyaz to Karen Hubbard as an appropriate one, even now that he knows exactly what was included in the 2012 label. At his deposition, after having discussed the risks listed in the 2012 Beyaz label as well as risks discussed in previous studies and FDA warnings, Dr. Rowley was asked 'Do you believe today that your decision to prescribe Beyaz for Mrs. Hubbard was appropriate?' He responded, 'Yes.'").

providing the physician with information about risks associated with those products." *E.g., Salinero*, 400 F. Supp. 3d at 1345–46 ( (citing, e.g., *Felix*, 540 So. 2d at 104). "Where the learned intermediary doctrine applies, 'the duty to warn is directed to physicians rather than patients," because the "prescribing physician acts as an intermediary between the manufacturer and the consumer, weighing the potential benefits of a device against the dangers in deciding whether to recommend it to meet the patient's needs." *Id*. (citing *Felix*, 540 So. 2d at 104); *Beale v. Biomet, Inc.,* 492 F. Supp. 2d 1360, 1371-73 (S.D. Fla. 2007) (under Florida law, the duty of the manufacturer of a prescription drug or device runs to the physician rather than the patient); *Baker v. Danek Med.*, 35 F. Supp. 2d 875, 881 (N.D. Fla. 1998) ("manufacturers of prescription medical products have a duty only to warn physicians, rather than patients, of the risks associated with the use of a product"); *Mubita,* 2015 WL 5838515, at *4-5.

In light of the learned intermediary doctrine, Plaintiff's claims of fraud and/or misrepresentation fail. Plaintiff did not receive, and could not have relied on, any alleged representations or misrepresentations from Ethicon. Instead, any representations by Ethicon were made to Dr. Davila, the prescribing physician. And "[s]imilarly, the ultimate consumer of an alleged defective product cannot prove reliance on a misrepresentation of fact about which she has no knowledge.*"* *Cruz v. Mylan, Inc*., No. 8:09CV1106T17EAJ, 2010 WL 598688, at *3 (M.D. Fla.

Feb. 17, 2010).  Given Florida's recognition of the learned intermediary doctrine, any fraud- or misrepresentation-based claims are subject to summary judgment. *See Nunez v. Coloplast Corp*., 461 F. Supp. 3d 1260, 1267 (S.D. Fla. 2020) (citing *Huskey v. Ethicon, Inc*., 29 F. Supp. 3d 736, 741–43 (S.D.W. Va. 2014), and *Bellew v. Ethicon, Inc*., 2014 WL 6886129, at *3–4 (S.D. W. Va. Nov. 24, 2014)).

Alternatively, these claims fail for the same reasons that the failure to warn claim fails: lack of causation.  *See, e.g., Beale,* 492 F. Supp. 2d at 1371-73 (collecting cases) (dismissing claims for negligence, negligent misrepresentation, strict product liability, and alleged violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)).  This is an additional and independently sufficient ground for summary judgment.

Further, the claim of Constructive Fraud (Count VIII) fails.  "Under Florida law, constructive fraud occurs 'when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.'"  *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc*., 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005).  No such relationship has been (or could be) alleged between Plaintiff and Ethicon.  This claim is subject to summary judgment.

Plaintiff also asserts a claim for "Fraudulent Concealment" (Count VII), but it was not pleaded as a stand-alone claim under Florida law in Plaintiffs' Master

Complaint in the MDL.  Ex. 4: Pretrial Order No. 15, First Am. Master Long Form

Compl., MDL No. 2327, *available at* https://www.wvsd.uscourts.gov/MDL/

ethicon/orders.html, at ¶ 148-156.[6]  Indeed, it only relates to whether Plaintiff can

prove, through tolling (based on alleged fraudulent concealment), that her action

was timely filed.   *See Mubita*, 2015 WL 5838515, at *5 (granting summary

judgment on claim for fraudulent concealment).

On any of the above, independent grounds, Plaintiff's fraud-based claims

and claim for negligent misrepresentation are subject to summary judgment.

### C.   Plaintiff has no evidence for a Negligent Infliction of Emotional Distress claim (Count X).

Plaintiff also asserts a claim for Negligent Infliction of Emotional Distress

(Count X), but this claim is not cognizable here and would fail for lack of evidence

anyway.

Under Florida law, "the elements required to allege a cause of action for

negligent infliction of emotional distress [are]: (1) the plaintiff must suffer a

physical injury; (2) the plaintiff's physical injury must be caused by the

psychological trauma; (3) the plaintiff must be involved in some way in the event

causing the negligent injury to another; and (4) the plaintiff must have a close

---

[6]  It appears that plaintiffs in the MDL understood that Florida did not believe the claim to be an independent cause of action, as the Master Complaint does not include Florida in the list of states that "recognize such a cause of action."  *See* First Am. Master Long Form Compl. ¶149.

personal relationship to the directly injured person." *Zell v. Meek*, 665 So. 2d
1048, 1054 (Fla. 1995), *cited in Salinero*, 400 F. Supp. 3d at 1353.  "Generally,
Florida follows the 'impact rule,' which provides that before a plaintiff can recover
damages for emotional distress caused by the negligence of another, the emotional
distress suffered must flow from physical injuries the plaintiff sustained in an
impact.'" *Id.*  To prevail, "the physical injury must be caused by the psychological
trauma." *Id.*

As the district court ruled in *Salinero*, such claim is subject to summary
judgment where the plaintiff "may have suffered various physical injuries (such as
her fistula), but her physical injuries allegedly were caused by defective [ ] Mesh,
not by psychological trauma."  *Salinero*, 400 F. Supp. 3d at 1353.  Similarly, in
*Nunez v. Coloplast Corp.*, 461 F. Supp. 3d 1260 (S.D. Fla. 2020), the district court
granted summary judgment and explained that

> [t]he Court agrees with the *Salinero* analysis and finds it applies here,
> as well.  Plaintiff's physical injuries stem directly from the allegedly
> defective product—the Altis implants. This is the entire basis of
> Plaintiff's claims. In fact, Plaintiff's emotional distress from this ordeal
> was caused by the trauma from any physical injuries related to the
> allegedly defective product. This, of course, is the opposite of an
> NIED claim. Simply, there is no proof, nor any allegation much less,
> that her alleged emotional distress caused the physical injuries.

*Nunez*, 461 F. Supp. 3d at 1268.

The same facts are present here; Plaintiff claims she suffered physical injuries from alleged defects in the Prolift and TVT-O devices (*see, e.g.,* Third Am. Pl. Fact Sheet, at 7)—not by psychological trauma. This claim is subject to summary judgment.

### D.     Plaintiff's Gross Negligence claim (Count XIV) is not cognizable.

Under Florida law, "gross negligence is a heightened standard of proof to receive punitive damages under Florida law and not a stand-alone claim." Ex. 5: *Smith v. Ethicon, Inc.,* Case No. 4:20-cv-00394 (N.D. Fla. Dec. 28, 2020) (citing *Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242, 247 (Fla. 1st DCA 1984) and dismissing claim for "gross negligence" in pelvic mesh case under Florida law). Plaintiff's claim for Gross Negligence (Count XIV) should be dismissed.

## V.     Plaintiff cannot establish a consumer protection claim (Count XIII).

To prove a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213 ("FDUTPA"), a plaintiff must show "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). Plaintiff cannot establish this claim for several independent reasons.

First, the FDUTPA does not apply to "[a] claim for personal injury or death . . . ."  Fla. Stat. § 501.212(3); *Barrow v. Bristol-Meyers Squibb Co.,* 1998 WL

812318, at *46 (M.D. Fla. Oct. 29, 1998) (plaintiff had no claim under FDUTPA against a breast implant manufacturer).

Second, the FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1); *see also Prohias v. AstraZeneca Pharms., L.P.*, 958 So. 2d 1054, 1056 (Fla. 3rd DCA 2007) (FDUTPA claims properly dismissed where drug manufacturer's promotional and advertising activity was supported by the FDA's approved labeling of a prescription drug). The FDA cleared the TVT-O and the mesh used in Prolift (mesh devices that were implanted in Plaintiff) before her physician prescribed the medical device for her condition. Therefore, dismissal of Plaintiff's FDUTPA claim is required as a matter of law.

Third, the learned intermediary doctrine bars the FDUTPA claim, as discussed above. *E.g., Beale*, 492 F. Supp. 2d at 1372-73 ("[w]hile Plaintiffs have provided various names for their claims against Biomet, the claims are all ultimately based upon Biomet's alleged failure to warn of the risks of the device. Because Florida has adopted the learned intermediary doctrine, I conclude that it would follow the reasoning above and hold that the doctrine bars the Plaintiffs' claims in this case.").

For any of these reasons, the FDUTPA claim should be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, Defendants request that the Court enter summary judgment on Plaintiff's claims for failure to warn (Count I, III); fraud- and misrepresentation-based claims (Count VI–fraud, Count VII–fraudulent concealment, Count VIII—constructive fraud, Count IX–negligent misrepresentation); negligent infliction of emotional distress (Count X); violation of consumer protection laws (Count XIII); and gross negligence (Count XIV). Defendants pray for all other relief to which they are entitled.

This 15th day of February, 2021.

Respectfully submitted,

*/s/ Brett Tarver*
Brett Tarver
Florida Bar No. 1000408
TROUTMAN PEPPER
HAMILTON SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216
Telephone: 404.885.3000
Facsimile: 404.885.3900
Brett.tarver@troutman.com

/s/ S. Eric Rumanek
S. Eric Rumanek
Georgia Bar No. 558047
TROUTMAN PEPPER
HAMILTON SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216
Telephone: 404.885.3000
Facsimile: 404.885.3900
Eric.rumanek@troutman.com
Admitted *Pro Hac Vice*

*Counsel for Defendants Ethicon Inc. and Johnson & Johnson*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the within and foregoing document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the counsel of record.

This 15th day of February, 2021.

/s/ Brett Tarver
Brett Tarver
Florida Bar No. 1000408