# EXHIBIT 7 b

thorough understanding and knowledge of the chemical, physical and synthetic characteristics of meshes and how they react inside the human body. Based upon vast amounts of general surgery and basic science literature, there is a consensus that synthetic meshes that are lighter weight, larger pore size, monofilament, and that are capable of maintaining their elasticity and structural stability will have better results with fewer complications. Of all the mesh characteristics mesh porosity, mesh pore size and mesh stability under load are the most important. If a mesh product's design does not allow for effective tissue integration and fibrotic bridging occurs, leading to a rigid scar plate, many adverse events can occur such as erosion, nerve entrapment, pain syndromes, dyspareunia, loss of elasticity, mesh contraction, organ dysfunction and the need for reoperation. [186,187,188,189,190,191,192]

White et al. published an article suggesting that inflammatory response may also be explained by the amount of movement of the implant and mechanical stresses that are placed on the mesh. As the movement and mechanical stresses of the pelvic floor differ extensively to that of the abdominal wall, it should have been obvious to Ethicon that the inflammatory response would not only be different, but also more intense in a pelvic floor implant.

In the late 1990's, studies were published by Klinge et al. in which explanted hernia mesh was analyzed from rats, dogs and humans. They discovered that in some patients, a chronic foreign body reaction could still be observed after 15 years. Given that this implant is meant to be placed permanently in a woman's pelvic tissue, to base the safety and efficacy of Prolift on studies that were short-term (6 months or less in duration), while studies were available in the scientific literature showing potential complications up to 15 years, was irresponsible. Generally

---

[176] Amid PK. Classification of biomaterials and their related complications in abdominal wall hernia surgery. Hernia (1997) 1:15-21.

[177] Bouikerrou M, Boulanger L, Rubod C et al: Study of the biomechanical properties of synthetic implanted in vivo. European J. Obstet & Gynecol and Repro Bio 134: (2007) 262-267.

[178] Klinge U, Klosterhalfen B, Muller M et al: Foreign body reaction to meshes used for the repair of abdominal wall hernias. Eur J Surg. 1999 Jul;165(7):665-73.

[179] Klinge U, Klosterhalfen B, Birkenhauer V: Impact of polymer pore size on the interface scar formation in a rat model. J. Surgical Research 103, 208-214 (2002).

[180] Klinge U, Klosterhalfen M, Muller A et al: Shrinking of polypropylene mesh in vivo: an experiment study in dogs. European Journal of Surgery Volume 164, Issue 12, pages 965–969, December 1998.

[181] Klosterhalfen B, Klinge W, Schumpelick V: Functional and morphological evaluation of different polypropylene-mesh modifications for abdominal wall repair. Biomaterials. 1998 Dec;19(24):2235-46

[182] Klosterhalfen B, Klinge W, Hermanns B et al: Pathology of traditional surgical nets for hernia repair after long-term implantation in humans. [ABSTRACT] Chirugr 2000;71:43-51.

[183] Krause H, Galloway S, Khoo S et al: Biocompatible properties of surgical mesh using an animal model. Aust N Z J Obstet Gynaecol. 2006 Feb;46(1):42-5.

[184] Garcia M, Ruiz V, Godoy A, et al: Differences in polypropylene shrinkage depending on mesh position in an experimental study. American Journal of Surgery Vol 193, Issue 4, April 2007, p538-542.

[185] Cappelletti M, Attolini G, Cangioni G, et al. The use of mesh in abdominal wall defects. Minerva Chir. 1997 Oct;52(10):1169-76.

[186] ETH.MESH.00869977 - 00870098

[187] ETH.MESH.02589033 - 02589079

[188] ETH-80645 – 80651

[189] Robinson Deposition 3-13, p 120

[190] Hinoul Deposition 4-5, p165-170

[191] Robinson Deposition 3-13, p129-130

[192] Kirkemo Deposition 4-18, p138

speaking, the women who undergo these POP mesh procedures are between 30 and 60 years of age.  To have a chronic foreign body reaction that can continue for an unmeasured amount of time in a woman who will have this mesh implanted for decades is unsafe and can potentially lead to life-long debilitating pain and complications.  Studies that analyzed the complications that occur years after implantation, such as those performed by Klinge and his colleagues, should have provided Ethicon with a more comprehensive understanding of the true long-term risks and complications to patients, and at the very least, should have prompted Ethicon to conduct long-term controlled studies prior to any marketing of the Prolift System.[193,194,195,196,197,198]

Despite the vast amount of data regarding mesh-related inflammatory response, the original and the revised IFU for Prolift claim that "...*implantation of Gynecare Gynesmesh PS mesh elicits a minimum to slight inflammatory reaction, which is transient*".[199,200]  However, Ethicon, according to an internal Ethicon email from Scott Jones dated 11-12-2008, knew this was not true because "*Polypropylene creates an intense inflammatory response that results in rapid and dense incorporation into the surrounding tissues...*"[201]  The internal Ethicon documents and depositions are filled with references to the chronic foreign body reaction and inflammatory response by the body to the mesh.

## K. Degradation

As polypropylene has been used in surgery for over 50 years as a suture material, the mesh in the Prolift System was marketed by Ethicon as inert.  However, many published studies and internal Ethicon documents prove otherwise.[202,203,204,205,206,207,208,209,210]

---

[193] Klinge U, Klosterhalfen B, Muller M et al:  Foreign body reaction to meshes used for the repair of abdominal wall hernias. Eur J Surg. 1999 Jul;165(7):665-73.
[194] Klinge U, Klosterhalfen B, Birkenhauer V: Impact of polymer pore size on the interface scar formation in a rat model. J. Surgical Research 103, 208-214 (2002).
[195] Klinge U, Klosterhalfen M, Muller A et al:  Shrinking of polypropylene mesh in vivo: an experiment study in dogs.  European Journal of Surgery Volume 164, Issue 12, pages 965–969, December 1998.
[196] Klosterhalfen B, Klinge W, Schumpelick V: Functional and morphological evaluation of different polypropylene-mesh modifications for abdominal wall repair. Biomaterials. 1998 Dec;19(24):2235-46.
[197] Klosterhalfen B, Klinge W, Hermanns B et al: Pathology of traditional surgical nets for hernia repair after long-term implantation in humans. [ABSTRACT]  Chirugr 2000;71:43-51.
[198] Klosterhalfen B, Junge K, Klinge W. The lightweight and large porous mesh concepts for hernia repair. Expert Rev Med Devices. 2005 Jan;2(1):103-17.
[199] ETH-00005 (Original)
[200] ETH-01764 (Revised)
[201] ETH.MESH.00087294
[202] ETH.MESH.02589066-02589068
[203] ETH-80645-80651
[204] Robinson Deposition 3-14, p 532-533
[205] Kirkemo Deposition 4-18, p137-138
[206] Klinge U, Klosterhalfen B, Muller M et al:  Foreign body reaction to meshes used for the repair of abdominal wall hernias. Eur J Surg. 1999 Jul;165(7):665-73.
[207] Klinge U, Klosterhalfen B, Birkenhauer V: Impact of polymer pore size on the interface scar formation in a rat model. J. Surgical Research 103, 208-214 (2002).
[208] Klinge U, Klosterhalfen M, Muller A et al:  Shrinking of polypropylene mesh in vivo: an experiment study in dogs.  European Journal of Surgery Volume 164, Issue 12, pages 965–969, December 1998.
[209] Klosterhalfen B, Klinge W, Schumpelick V: Functional and morphological evaluation of different polypropylene-mesh modifications for abdominal wall repair. Biomaterials. 1998 Dec;19(24):2235-46.

Costello et al., in 2007, reported that polypropylene is more susceptible to degradation due to oxidation caused by inflammatory response. Using Scanning Electron Microscopy (SEM), degradation could be seen in PP in the form of cracks and peeling.

Dr. Donald Ostergard, a urogynecologist and founder of AUGS, created a presentation titled "*Polypropylene is Not Inert in the Human Body*" in which he described degradation of in vivo polypropylene.

"Degradation occurs by oxidation";

"A large surface area incites more inflammation";

"This results in more oxidation since more macrophages are present";

Macrophages secrete hydrogen peroxide and hypochlorous acid to oxidize the mesh";

"Mesh may become brittle."

In a 2010 article by Clave et al., 100 pelvic floor explants were analyzed. Results showed an over 20% rate of degradation from the implants. They concluded that "*for transvaginal surgery, clinical experience indicates the use of low density, large pore implants knitted from a monofilament to facilitate tissue integration, and decrease the inflammatory response....not all types of PP implants degraded equally.*" It should be noted that the lead author, Henri Clave, holds an educational position for Ethicon Europe.

In a 2013 article by Wood et al, it was determine that polypropylene material will degrade in vivo due to its exposure to foreign body responses.[211]

As polypropylene degrades, the inflammatory response increases and intensifies.[212,213,214] The abraded fiber surface increases the surface area of the mesh, provides multiple areas that can effectively harbor bacteria, and creates a "*barbed-wire*" effect, all of which lead to an increased risk of an enhanced and chronic inflammatory response, as well as chronic infections due to bacterial proliferation at the mesh surface.

The literature and internal Ethicon studies demonstrate clearly that Ethicon's surgical polypropylene meshes oxidize, degrade, crack and peel in human tissue.[215]

---

[210] Klosterhalfen B, Klinge W, Hermanns B et al: Pathology of traditional surgical nets for hernia repair after long-term implantation in humans. [ABSTRACT] Chirurg 2000;71:43-51.

[211] Wood, A. et al. Materials characterization and histological analysis of explanted polypropylene, PTFE, and PET hernia meshes from an individual patient. J Mater Sci Mater Med 24, 1113-22 (2013).

[212] Mamy L, Letouzey V, Lavigne J et al: Correlation between shrinkage and infection of implanted synthetic meshes using an animal model of mesh infection. Int Urogynecol J. 2011 Jan;22(1):47-52.

[213] Boulanger L, Moukerrou M et al. Bacteriological analysis of meshes removed for complications after surgical management of urinary incontinence or pelvic organ prolapse. Int Urogynecol J (2008) 19:827-831

[214] Bellon J, Honduvilla N, Jurado F et al: In vitro interaction of bacteria with polypropylene/ePTFE prostheses. Biomaterials. 2001 Jul;22(14):2021-4.

[215] Liebert T, Chartoff R, Costgrove S. Subcutaneous Implants of Polypropylene Filaments. J.Biomed. Mater. Res. 1976; 10:939-951, Williams D. Review Biodegradation of surgical polymers. Journal of Materials Science. 1982;

Dr. Iakovlev has published numerous articles showing and explaining the degradation and surface cracking of polypropylene explants using histological and transmission electron microscopy approaches.[216]

Not only is this information widely known and accepted in the medical and scientific communities, but it was also known to Ethicon before and at the time of launch of the Prolift System.  There are Ethicon studies dating back as far as 1983 using test methods nearly identical to Dr. Iakovlev's showing in vivo degradation of the Prolene polypropylene material.[217]  Ethicon conducted additional studies in 1985 (dog study) and in 1987 (human explants); both showing in vivo degradation and cracking of the polypropylene materials.[218]

It is my opinion, to a reasonable degree of medical and scientific certainty that not only does polypropylene degrade in the human body, but failure to warn doctors and patients that Prolift mesh would degrade in human tissue was inexcusable and dangerous to patients and further demonstrates a pattern of Ethicon's refusal to truthfully and accurately communicate known risks and complications of permanent implantation of its Prolift mesh in patients.

### L.  Pain Syndromes

Persistent pelvic pain (lasting more than 12 weeks after surgery) such as vaginal pain, groin pain, pain with walking, pain with sitting, and pain with sexual activity has been reported as high as 20% of women following Prolift POP repair.  Mesh-induced pelvic and vaginal inflammation can lead to nerve irritation due to the mechanical irritation of the mesh and surrounding tissues on the pelvic nerves.  This process leads to chronic pain syndromes involving the pelvis, vagina, and buttocks.

The etiology of pain syndromes after Prolift surgery is multi-factorial, given the anatomy and physiology of the pelvic areas affected by the Prolift procedure and the consequences of permanent mesh placement.  Chronic pelvic and buttock pain can occur following the implantation of the Prolift system.  This is due to a number of reasons including the blind trocar passes through multiple large pelvic muscles, chronic inflammation, contraction of the mesh, nerve entrapment and disruption due to excessive scarring and scar plate formation, nerve trauma and dissection due to surgical implantation of a mesh with sharp edges that curls, ropes, deforms and forms painful ridges in the vagina and surrounding organs.  Any or all of the pelvic muscles can be permanently injured or inflamed secondary to the act of the trocars passing through them

---

17:1233-1246, Celine Mary, Yves Marois, Martin W. King, Gaetan Laroche, Yvan Douville, Louisette Martin, Robert Guidoin, Comparison of the In Vivo Behaviour of Polyvinylidene Fluoride and Polypropylene Sutures Used in Vascular Surgery, ASAIO Journal, 44 (1998) 199-206, Wood, et al. Materials Characterization and histological analysis of explanted polypropylene, PTFE, and PET hernia meshes from an individual patient. J Mater Sci: Mater med (2013) 24:1113-1122, DEPO.ETH.MESH.00000367, ETH.MESH.09557798, ETH.MESH.15144988, ETH.MESH.00874032, ETH.MESH.07192929, B. Klosterhalfen presentation "What can we learn from explanted meshes?", Depositions of Thomas Barbolt and Daniel Burkley and exhibits thereto

[216] Iakovlev V, Guelcher S, Bendavid R. In Vivo Degradation of Surgical Polypropylene Meshes: A Finding Overlooked for Decades. Virchows Archiv 2014, 463(1): 35; Iakovlev V, Guelcher S, Bendavid R. In Vivo Degradation of Surgical Polypropylene Meshes: A Finding Overlooked for Decades. Virchows Archiv 2014, 463(1): 35

[217] ETH.MESH.15955438

[218] DEPO.ETH.MESH.00004755; ETH.MESH.11336474; ETH.MESH.13334286

and/or secondary to the inflammation caused by the mesh contraction.  As a result of this muscular pain, it is not unusual for the woman to be greatly limited in her activities and have a significant negative impact on her QOL.  For most of the chronic pain syndromes there is no consistently successful treatment.[219,220,221]

On December 1, 2005, in the notes from the Prolift Round Table Discussion, buttock pain was identified as a complication,[222] but Ethicon did not list postoperative buttock pain as a risk in the original or revised Prolift IFU.  In February 2006, Dr. Michel Cosson (a French surgeon who was part of the team that developed the TVM procedure used with the Prolift system) advised Ethicon that a statement should be added to the Prolift IFU about the complication of postoperative pain.  However, the Prolift IFU was not revised at that time. The term "pain" was later added to the list of potential adverse reactions, in October 2009.  Therefore, Ethicon intentionally withheld information about postoperative pain as an adverse reaction after the Prolift procedure for 3 ½ years. [223]  Furthermore, merely listing the word "pain" woefully underdescribes the complex and chronic pain syndromes.

**M. Sexual Dysfunction**

Painful sexual activity (dyspareunia) and any functional sexual disorder which makes satisfactory sexual activity for the female and her partner painful will have a significant negative impact upon a patient's QOL.  Unfortunately, this condition, as well as any other sexual QOL issues, are frequently not studied, are underreported when studied, or completely ignored in the medical literature. The true impact and negative effect on QOL from embarrassment, loss of intimacy, pain, and depression for a woman affected with this condition cannot be truly estimated; but a vast amount of medical literature exists documenting how impaired sexual function significantly impacts a woman's QOL. Therefore, new-onset, post-mesh POP surgery dyspareunia (de novo) rates are underreported, but the reported rates range up to nearly 20%. [224]

The source of dyspareunia and vaginal pain following Prolift POP surgery is multifactorial.  The modalities described above can cause general pain and sexual dysfunction. Additionally, the chronic and progressive nature of mesh contraction causing vaginal shrinkage, shortening and fibrosis (firmness) plays a significant role.  This condition continues indefinitely such that many patients currently unaffected become affected with time.  Depending on the severity of vaginal shrinkage and shortening, outcomes can range from mild sexual discomfort to complete loss of sexual function and inability to accommodate for intercourse.

Also, many studies report only short-term results of less than one year.  It is understood that mesh contraction can take many years to develop and this progressive nature of mesh contraction can lead to a delayed onset of dyspareunia and vaginal/pelvic pain.  Therefore, there

---

[219] ETH-80647 (Lucente prefers "20 recurrences or erosions over 1 pain patient")
[220] ETH.MESH.00067363
[221] Withagen M Vierhout M, Hendricks J et al: Risk factors for exposure, pain, and dyspareunia after tension-free vaginal mesh procedures. Obstet Gynecol. 2011 Sep;118(3):629-36.
[222] ETH-80636-80644
[223] Walji Deposition 3-4, p 294
[224] Walid MS, Heaton RL: Laparoscopic apical mesh excision for deep dyspareunia caused by mesh banding in the vaginal apex. Arch Gynecol Obstet. 2009 Sep;280(3):347-50.

are more patients who have been treated with Prolift mesh who have not yet developed dyspareunia, but given enough time, will.[225,226,227,228,229]  There is no effective treatment for dyspareunia.  Despite all available treatment modalities, it is not uncommon for up to 50% of patients to have permanent pain with sexual activity.

Internal emails and meetings at Ethicon both prior to and after the launch of Prolift demonstrate a failure to address this serious condition either through proper warnings to doctors and patients or in design changes to decrease the risk.[230]  Despite its knowledge of this very serious complication, Ethicon elected not to warn of the increased risks to sexually active women, or include the statement regarding the risk of Prolift POP surgery causing "pain with intercourse and pelvic pain."[231] As a result of this decision, countless women were, and will be, permanently and needlessly forced to suffer lifelong pain and embarrassment by Ethicon's failure to properly warn of this condition.

## N.  Frequency of Complications

There is some confusion and often misleading documentation discussing whether or not a given mesh-related complication is defined as "rare" or not.  As mentioned earlier in this report, it is important to note that there is no single, widely-accepted definition for "rare." The definitions used in the medical literature and by national health plans are similarly divided, with definitions ranging from 1/1,000 to 1/200,000.  Based upon these criteria most of the mesh-related complications do not remotely fit the definition of "rare."[232,233,234] Ethicon defines "rare" as 1/100,000.  Ethicon claims that complications due to its mesh products are "rare".  But the percentages of serious complications listed in this report are anything but "rare" and many instances occur greater than 10% (1/10) of the time and in other instances 20% (1/5) or more of the time.

In an article published in 2011, a group of physicians were attempting to create terminology and classifications for complications directly related to the implantation of devices into the pelvic floor.  The majority of these physicians stated that they were in some way affiliated with medical device manufacturers.  Approximately 84 categories were created, showing the large amount of complications that are directly related to mesh products.[235]

[225] ETH-80645 – 80651
[226] Walji Deposition 3-8, p398-399
[227] Walji Deposition 3-8, p365-366
[228] Gauld Deposition Rough 4-26, p200
[229] Hinoul Deposition 4-5, p200
[230] ETH.MESH.02017152  2007 Expert Meeting; ETH.MESH.00870466: 2006 Expert meeting;
ETH.MESH.01220871 email from Kammerer re: D'Art Conversation with Prof. Jacquetin; ETH.MESH.05448541:
Email from Susanne Landgrebe re shrinkage review; ETH-18761: email from Kelly Brown re: Proposal for work
with CBAT; ETH.MESH.00130117: Email from Ophelie Berthier re ICS Prolift Abstracts
[231] ETH-80318
[232] Gauld Deposition rough 4-26, p 171, p251
[233] Walji Deposition 3-8, p 477
[234] Hinoul Deposition 4-5, p71
[235] Haylen B, Freeman R, Swift S et al: An International Urogynecological Association (IUGA) / International
Continence Society (ICS) joint terminology and classification of the complications related directly to the insertion of
prostheses (meshes, implants, tapes) & grafts in female pelvic floor surgery. Int Urogynecol J (2011) 22:3–15.

The Prolift surgical kit and procedures are relatively new and unique surgical tools and surgical procedures for POP.  Therefore, there is a learning curve associated with their proper performance.  In order to reduce complications, to provide the most appropriate anatomical results, and to maintain normal vaginal and pelvic floor function, it is impracticable if not impossible for treating surgeons to have an advanced knowledge of the range of reported complications if "kept in the dark" by manufacturers of these products.

It does not require vast amounts of medical knowledge and experience nor does it require biostatistical analysis to view complications consistently ranging in the 10-20% range as not "rare." Using common sense and the generally accepted definitions of the medical term "rare," most, if not all of the mesh-related complications are "frequent" or "common", but certainly not "rare."  Statements suggesting otherwise are misleading to unsuspecting surgeons and patients. [236,237,238,239]

A consistent pattern of significantly increased complication rates of transvaginal Prolift mesh over traditional no-mesh POP repairs is found throughout the medical literature.  These complications also come without demonstrable symptomatic or QOL improvement compared to traditional non-mesh surgery.  The complications are not "rare" as stated and otherwise implied in the Ethicon IFU documents regarding Prolift.  Some complications require repeat surgical intervention to repair the tissue damaged by the effects of the Prolift mesh.  Complications such as pelvic pain, buttock pain, vaginal pain, dyspareunia, and pain with walking and sitting have no known consistently successful treatment.

Unfortunately, due to multiple factors, it is very difficult to know the true incidence and severity of many of the mesh-specific complications, but it is clear that they are often underreported. Ethicon withheld information about the frequency of complications in its planned response to the FDA notification. [240]   Instead of making efforts to disseminate the very important safety information contained in the FDA notification, Ethicon deliberately downplayed the notification, and instructed its sales staff to refrain from bringing up the FDA notification with physicians. [241]  Such instructions are contrary to Ethicon's duty to provide fair and balanced information to physicians and patients regarding the Prolift System.

---

[236] Walji Deposition 3-8, p477
[237] Gauld Deposition rough 4-26, p251
[238] Gauld Deposition rough 4-27, p171
[239] Hinoul Deposition 4-5, p71
[240] ETH-47351 (10-15-2008 email about response to FDA notification "…We would prefer not to give reported complication rate for TVT but instead emphasize our commitment to reporting complications")
[241] ETH-47369 (10-21-08 email from Scott Jones about FDA notification to Field Sales Team "…. Also, please note that you are not to proactively initiate conversations with your customers about this notice. If you are asked about the notice, you should respond with the following statement: The complications stated in the notification are known risks that can occur with surgical procedures of this type and they are included in the labeling for our products. If you have further questions, please contact our Medical Affairs group.")

## VIII.   Product Development

### A.  Standardized Product & Technique

The attempt at developing a standardized surgical technique for pelvic mesh implantation began with the TVM studies in both the US and France. Ethicon's reasons for proceeding with the launch of Prolift were "supported" by very limited results that were seen during these studies. [242,243,244,245]   At the time of launch, only short-term (6-month) results were available.  They saw complication rates that were higher than expected; however, Ethicon continued to list them as "rare."  Also, as pelvic floor meshes are implanted as a permanent device, it is inappropriate to consider 6-month results a sufficient representation of efficacy and safety, as complications continue to increase with time, as reported by Miller et al. in 2011. [246]  The technique used differed between the initial U.S. and French TVM studies.  Although, this technique was not considered to be the "final" procedural guide or device, it was their justification for launching Prolift in 2005.   In fact, all Ethicon-sponsored articles reporting TVM findings appear to be flawed and misleading.

Ethicon did not submit a 510k premarket notification application to the FDA before marketing Prolift in March 2005.  Ethicon was not permitted to market Prolift Pelvic Floor System until FDA clearance in May 2008. [247]  It was sold to surgeons and patients for 3 ½ years without proper FDA clearance.  No reasonable surgeon would have used the Prolift System had Ethicon disclosed that they had failed to seek or receive proper FDA clearance for this "revolutionary" surgical technique using a "specially designed" pelvic floor mesh.  The fact that Ethicon employees acknowledge in internal communications, as cited herein, that the TVM procedure and surgical technique was a "major mind shift" for pelvic surgeons, makes Ethicon's decision not to seek 510k clearance that much more egregious.

### B.  The IFUs for Prolift Contain the Same Indications as for Gynemesh PS.

The Prolift Systems represented something much different from traditional POP surgery repair as they were developed as a kit (with components like Guides/trocars, Cannulas, Retrieval Devices, and pre-cut mesh implants) and as a new procedure with detailed steps. [248,249,250]  As such, multiple new issues of safety and effectiveness were introduced with the Prolift System over and above Gynemesh PS, which was sold simply as a sheet of mesh to be used by the physician as the physician deemed was appropriate.

### C.  Ethicon Designed Prolift, Not Merely as a Surgical Mesh, but as both a Product *and* a Technique.

---

[242] ETH.MESH.02589071
[243] Walji deposition 3-8, p457
[244] Gauld Deposition rough 4-26, p200
[245] Hinoul Deposition 4-5, p200
[246] Walji Deposition p404
[247] ETH-01363 - 01365
[248] ETH-00253 (Gynemesh PS)
[249] ETH.MESH.00095913 – 00095918 (Prolift)
[250] Cosson M, Caquant F et al. Prolift for Pelvic organ prolapse surgical treatment using the TVM group technique - a retrospective study of 687 patients. (ABSTRACT)

Ethicon obtained United States patents for:

- The process of creating a surgical mesh of PP monofilament yarn; [251]
- The shape of the mesh implants and the procedures for placing the mesh implants; [252]
- The system and method for mesh placement (guide, cannula, retrieval, steps of the surgery); [253] and,
- The packaging (precut mesh, etc.). [254]

All of these patents are further evidence of the unique nature of the Prolift product and surgical technique.  Ethicon also consistently refers to the "*Prolift procedure*" in its materials, including the IFU and the Prolift surgical technique guide. [255,256,257]

### D. Faulty Prolift Product Design and Resultant Complications

There is a scientific correlation between the biophysical characteristics of Prolift mesh and the documented mesh-specific complications of vaginal erosion, extrusion, inflammation, and infection with resultant chronic pain in the pelvis and vagina. [258,259]  As a classification for pelvic floor meshes has not been created, the classifications for hernia meshes have often been used.  Amid wrote an article in 1997, determining that hernia meshes should have a pore size greater than 75 microns in order to allow for macrophages to clear bacteria; however, his classification did not address scar plating and contraction, and was outdated shortly after publication because "macroporous" or "large pore meshes" did not exist prior to the development of Vypro (Ethicon) mesh, first marketed in 1998.  An article was recently published by Klinge et al., which requires a textile porosity greater than 60% in order to be considered 'large pore,' and therefore, allowing for an appropriate level of tissue integration.  It is also noted in that publication as well as other scientific literature and numerous Ethicon documents (including Ethicon Medical Affairs Director, David Robinson's draft Clinical Expert Report for Prolift +M) that the pore size of mesh implants needs to be greater than 1mm in all directions in order to allow for proper tissue integration.  Inadequate tissue integration caused by inadequate porosity and pore size can reasonably be expected to result in the development of a rigid scar plate, potentially leading to erosion, nerve entrapment, pain syndromes, dyspareunia, and loss of elasticity and mesh contraction. As early as 1998, Ethicon knew and stated repeatedly throughout internal documents that pore size less than 1 mm would result in fibrotic bridging and increased safety risks to patients.

---

[251] ETH-07427 - 07433
[252] ETH-07434 – 07494
[253] ETH-07546 - 07609
[254] ETH-07495 - 07545
[255] ETH-00002
[256] ETH-01761
[257] ETH.MESH.00419572
[258] ETH.MESH.02589066-02589068
[259] Kirkemo Deposition 4-18, p135-138

40

Both during mesh implantation and after, the arms are put under a considerable amount of strain, which may ultimately lead to mesh curling, roping, and/or pore deformation. This creates an even further enhanced state of inflammatory response in the pelvic area.[260,261]

Once a pelvic floor mesh is implanted, the surgeon is unable to see the mesh to know whether it has stayed in a flat position. Wrinkling or curling of the mesh will also prevent adequate tissue in-growth and lead to fibrotic bridging, and increased contraction, and thus, the cascade of chronic inflammatory events, further increasing the risk of complications.

As my practice has evolved to spending almost half my clinical time treating mesh-related complications related to both incontinence slings and POP mesh, I can say that mesh curling, roping, fraying and deforming is a real problem with these meshes. The Prolift mesh, especially the arms, curls and ropes and increases the risk of the cascade of symptoms as set forth throughout this report, with erosion/extrusion, chronic pelvic pain, dyspareunia, organ dysfunction and the need for painful multiple revision surgeries being at the top of the list.

**E. Insufficient Prolift Preoperative Guides**

Ethicon is responsible for ensuring the safety and effectiveness of products for its intended use and function. Ethicon was marketing not only a new product but also a new surgical procedure.

Ethicon claimed in marketing materials that Prolift was appropriate for almost all patients,[262,263] but it had no clinical evidence to support these claims.

Ethicon claimed that Prolift was appropriate for patients with recurrent prolapse,[264,265] but it was forced to admit that it had no clinical evidence to support this claim during FDA review. Therefore, Ethicon agreed to remove this claim from its labeling.[266] Despite this "agreement," Ethicon continued to make this claim in online Prolift DTC advertising.

Ethicon claimed that a sling procedure to treat SUI could be performed at the same time as the Prolift procedure.[267] However, Ethicon had no clinical evidence to support this claim. In fact, Ethicon had received feedback from experienced Prolift surgeons that the effectiveness of sling procedures was dramatically decreased when performed at the same time as the Prolift procedure.[268] Despite this, Ethicon apparently never studied this issue and never provided this information to surgeons or patients (i.e., that the effectiveness of slings may be decreased with concomitant Prolift procedure).

---

[260] Kirkemo Deposition 4-18, p135-138, p150
[261] Hinoul Deposition 4-5, p506-507
[262] ETH-00260
[263] ETH-00264
[264] ETH-00260
[265] ETH-00264
[266] ETH-01321
[267] ETH-00258
[268] ETH-80289 (Email from Steele to Bonet dated 5-10-2006: "decreased efficiency in TVT procedures when treating concomitantly with Prolift. [Dr.] LaSala has had >50% failure rate…")

Ethicon claimed that pain is a symptom of POP,[269,270,271] but they had received feedback from experienced clinicians that pain is not a typical symptom of POP.[272,273]   Their marketing materials implied that patients with preoperative pain due to prolapse experienced resolution of the pain after Prolift.  However, they had received feedback from experienced Prolift surgeons that patients with preoperative pain often experienced dramatic exacerbation of pain *after* the Prolift procedure.[274,275]  Despite this feedback, Ethicon apparently never specifically studied this issue. Ethicon never provided guidance to surgeons or patients regarding the appropriate evaluation and management of patients with pain and prolapse.

Ethicon also marketed to overweight and elderly patients, claiming the procedure was appropriate for them;[276,277,278] but, this claim was never studied and thus, Ethicon had no clinical evidence to support claims that Prolift was a reasonable and appropriate procedure for overweight or elderly patients.

Ethicon stated in the IFU for the TVT (Tension-Free Vaginal tape for urinary incontinence) product line that these products should not be used on patients who are on anti-coagulation therapy (blood thinners such as aspirin, Coumadin, Plavix®).  This is because of the blind trocar passages (one on each side) and the inherent bleeding risk this presents.  However, the Prolift procedure involves up to six (6) blind trocar passes, and despite anti-coagulation patients' increased risk of bleeding with these trocar passes, Ethicon chose not to warn against this risk in its original Prolift IFU.[279]   Although working drafts of the original IFU contained the statement, "*Do not use the Gynecare Prolift Pelvic Floor Repair Systems in patients who are on anti-coagulation therapy,*"[280] this statement was subsequently deleted.[281,282] Ethicon eventually revised the IFU to say that patients on anticoagulation should be "*carefully managed.*"[283]

**F.  Inadequate Prolift Pelvic Floor System Surgical Training**

A marked difference exists between the Prolift Pelvic Floor System (both product and procedure) and the traditional non-mesh POP repair surgery.  This fact was emphasized in Ethicon's product evaluations *before* Prolift was commercially available and in feedback *after* the product was marketed.  Because of the new technique developed with this product, Ethicon

---

[269] ETH-00255 - 00256
[270] ETH-00264
[271] ETH-48130
[272] ETH-85678 (Email from Dr. Butrick to David Robinson:  "POP does not cause pain!!!")
[273] Kirkemo Deposition 4-18, p97-98
[274] ETH-85676 (Butrick to Robinson, "I sure am getting tired of seeing these pts with bad myofascial pain after Prolifts…")
[275] ETH-85678 (slide from Butrick, "The aggressive surgery flares the pre-existing myofascial pain…")
[276] ETH-00264
[277] ETH-07712
[278] ETH-48130
[279] ETH-65877-65884
[280] ETH-16986
[281] ETH-17061
[282] Hinoul Deposition 4-6, p408-410
[283] ETH.MESH.00095913

recommended advanced training for surgeons prior to performing the Prolift procedures.[284,285,286,287]

Surgeon selection criteria for advanced training was initially focused on highly-skilled and experienced surgeons. Despite their advanced skill level, many of the surgeons had to be re-trained shortly after Prolift's launch.[288]

Despite Ethicon being provided feedback regarding the inadequacy of the training/trainees for the Prolift procedures, Ethicon representatives pushed the envelope on training. Ethicon did not want a repeat of the transobturator stress urinary incontinence inter-company competition where Ethicon was in a catch-up position from launch.[289,290]

In marketing materials, Ethicon claimed that Prolift was appropriate for almost all patients but it had no clinical evidence to support these claims.[291,292]

Hydrodissection is a surgical step used to create a space between the vagina and the rectum and/or bladder. The purpose of this step is to identify and surgically enter the rectovaginal/vesicovaginal space more easily and to reduce the risk of injury to the adjacent rectum and/or bladder. This step would seem even more important given the differences between vaginal dissections in Prolift procedures versus traditional procedures. However, the Prolift IFU makes no mention of vaginal wall hydrodissection. The Surgical Guide merely lists hydrodissection as a bullet-point item "to be considered as optional."[293] However, from internal documents and feedback from surgeons, Ethicon understood the importance of hydrodissection to minimize complications for surgeons unfamiliar with the vaginal dissection required for the Prolift procedure. Subsequently, there were many surgeons unaware of the potential importance of this potential surgical step.[294,295,296,297,298,299,300,301,302,303,304,305]

---

[284] *See* ETH-83318
[285] *See* ETH-62214
[286] *See* ETH-83323
[287] *See* ETH-01624
[288] ETH-62214 (Email from Vie [Education Development Manager] dated 5-17-2005: "…16 of the 84 [surgeons trained as of May 3] have needed to be retrained (19%)…")
[289] ETH-83193 – 83194 (email from Miller [proctor] dated 12-10-2005 regarding preceptorship: "…I thought a couple of those guys were going to poke somebody's eye out.")
[290] ETH-83318 (email from Sweatt [District Manager] dated 6-27-2006: "…The reps push the envelope on training because they don't want to see a repeat of the obturator wars, where we were in a catch up position from launch. Our current labs don't really discuss Gynemesh, which is what most doctors should in fact be using at this point.")
[291] ETH-00260
[292] ETH-00264
[293] ETH.MESH.00419573
[294] ETH-74435 ("key for minimizing erosion risk")
[295] ETH-02707-02708 ("…critical to maintaining low rates of mesh exposure seen by experienced…users.")
[296] ETH.MESH.PM.000019
[297] ETH.MESH.00419571-00419600
[298] ETH-20085
[299] ETH-60151 ("Hydrodissection is key in helping…")
[300] ETH.MESH.00158295 (Prolift Forums and Round Table Summary of experienced Prolift surgeons – "Hydrodissection was identified as a key procedural step")
[301] ETH-19943

Initially, Ethicon provided no guidance and subsequently provided inadequate guidance to surgeons as to the necessity of performing a cystoscopy (a procedure looking into the bladder at the time of Prolift Anterior and Prolift Total POP surgery). [306,307,308,309,310,311] Nor did Ethicon discuss the critically important issue of timing of the cystoscopy in conjunction with the Prolift procedures. A cystoscopy is an essential step following the blind passage of the Prolift. Guides/trocars to detect if there has been any inadvertent damage to the bladder. The surgeon can reassess the bladder following trocar removal to determine the most appropriate management for the patient, including cancelling the planned mesh insertion, as recommended by the Prolift surgical guide. [312,313] In the original Prolift IFU, there was no information regarding the need for cystoscopy or the appropriate timing of an intraoperative cystoscopy to detect potential bladder injury. Although the original draft version of the IFU did have a statement regarding intraoperative cystoscopy, the final version of the original IFU omitted such recommendation. [314,315]

Prolift surgeons recommended that cystoscopy be performed in all Prolift procedures. [316,317,318,319,320,321] However, Ethicon ignored this feedback and did not place this requirement in the IFU or the Surgical Guide.

Ethicon ignored a request by the FDA that cystoscopy be recommended. Instead, Ethicon added a statement in the Prolift IFU that cystoscopy was "optional." [322,323]

Ethicon understood that at many hospitals, surgeon credentialing for cystoscopy performance was limited by specialty, especially limiting gynecologists. [324] Thus, if cystoscopy were stated as a requirement in the Prolift IFU, surgeons without credentialing for cystoscopy (many gynecologists) would not be credentialed to perform Prolift surgery independently. So, in

---

[302] ETH-08028
[303] ETH.MESH.00008084
[304] Robinson Deposition 3-13, p193-196
[305] Henderson Deposition p146
[306] ETH-02711
[307] ETH-80643
[308] ETH-19622
[309] ETH-19944
[310] ETH-02713
[311] ETH-19645
[312] ETH.MESH.00419571 – 00419600
[313] Hinoul Deposition 4-6, p609-610
[314] ETH-62799
[315] ETH-62803 - 62808
[316] ETH-02711
[317] ETH-80643
[318] ETH-19622
[319] ETH-19944
[320] ETH-02713
[321] ETH-19645
[322] ETH-01242 – 01248 (12-20-2007 Communication from FDA to Ethicon regarding the Prolift and Prolift-M 510K's requesting "Please add a warning…")
[323] ETH-01761 2-22-2008 response by Ethicon stating that they would revise to say that "Cystoscopy may be performed…")
[324] Henderson Deposition 10-5, p457

order to broaden their market to surgeons not credentialed in cystoscopy, Ethicon chose to only list cystoscopy as an option, at the expense of patient safety.

Reducing the size (trimming) of the Prolift mesh is recommended in the Guide. [325] However, there is no explanation given to the implanting surgeon as to the standardization of when trimming is "*required*," what constitutes "*small reductions*," nor what constitutes a "*proper fit*" of the anterior and posterior mesh implants.   The Guide only states in one place that, "*[i]t is recommended to avoid large vaginal excisions…*"[326] No other guidance is given by Ethicon despite the fact that their consulting surgeons expressed to them how important it is to consider the anticipated amount of mesh contraction in determining whether and how much vaginal trimming to perform. [327,328]

The Prolift POP Procedure is not truly "*standardized*."   The first sentence of the Prolift Guide claims that, "*[t]he objective of the Prolift procedure is to achieve a complete anatomic repair of the pelvic floor defects in a standardized way*." However, one of the most important concepts of the Prolift procedure is "*tension-free*" placement of the mesh implant, which cannot be standardized given both the patient-to-patient and the surgeon-to-surgeon variability in detecting this. [329]

Ethicon representatives acknowledge that there is no standardized means of determining whether Prolift mesh is in fact, "*tension-free*." After four years of selling and training the Prolift procedures, Ethicon still had problems training surgeons on standardizing the "tension-free" aspects of the procedure. [330,331,332]

It is generally accepted that the correct positioning and tensioning of the mesh and mesh arms is an essential surgical step to prevent needless complications. However, Ethicon provides no standardized instruction on how to ensure that this critical step is performed correctly. Ethicon documents describe fixation of Posterior Straps (Transgluteal or vaginal approach). Two perineal incisions bilaterally and the cannulas are passed through gluteal area to traverse the sacrospinous ligament and exit into the vaginal incision.  Each of the two posterior straps is shortened and fixed directly to the sacrospinous ligament bilaterally. [333]

However, there is no guidance provided by Ethicon to the surgeons regarding: (a) how to decide whether sacrospinous fixation of the posterior straps is necessary or preferred over the transgluteal approach; (b) how to decide the proper length for trimming the posterior straps in a "standardized" manner; and (c) how to determine best means of affixing the shortened posterior straps to the sacrospinous ligaments in a "standardized" manner.

---

[325] ETH.MESH.00419584 - 00419585
[326] ETH.MESH.00419572
[327] ETH-80641 ("Mesh will contract up to 30%.")
[328] Robinson Deposition 3-13, p260
[329] ETH.MESH.PM.000019
[330] ETH-49659
[331] Hinoul Deposition 4-5, p506-507
[332] Kirkemo Deposition 4-18, p135-135, p150
[333] ETH.MESH.00419582

Positioning of the anterior segment of the Prolift is intended to be placed under the bladder in lateral contact with the arcus tendineus fascia pelvis. [334,335] But, the Surgical Guide does not give any guidance on how to accomplish this in a standardized manner, raising a number of questions regarding technique to accomplish this step.

Positioning of the posterior segment of the Prolift is intended to be placed above the rectum in lateral contact with the superior surface of the levator ani muscles. [336 337 338 339] But, the Surgical Guide does not give any guidance on how to accomplish this in a standardized manner, raising a number of questions regarding technique to accomplish this step.

Adjusting the position and the tension of the Prolift is addressed in the Guide. [340] But it gives no guidance on how to determine: (1) when and whether "further adjustments of tension and position" will be neither necessary, nor (2) the magnitude of "further adjustments" in a "standardized" manner.[341 342] Again, in 2009, more than four years after the launch of Prolift, Ethicon was made aware of the difficulty in teaching "tension-free" placement in a "standardized" manner. [343] Since mesh arm tensioning and positioning are such an essential aspect to reducing complications, it is wholly unacceptable for such a critical surgical procedure to be left without clear instructions for the surgeon.

A surgeon would reasonably expect Ethicon's Surgical Guide to provide useful guidelines on critical maneuvers and measures to avoid needless complications. The absence of recommendations and potential complications would reasonably imply to a surgeon a lack of importance of key surgical steps. It is important to keep in mind that Ethicon developed and patented the TVM technique and surgical procedure, which was, according to Ethicon, a "major mind shift" in urogynecological surgery. At a minimum, Ethicon should have provided key technique guidelines, warnings, and recommendations based upon high volume surgeons' experience and feedback such as:

- Warnings regarding the increased risk of urinary incontinence following Prolift Anterior and Prolift Total repairs.
- Need for hydrodissection of vaginal wall.
- Critical role of permanent suture at base of cervix.
- Importance of proper vaginal wall dissection to prevent complications.
- Importance of mesh trimming and need for it to be done properly.
- The implications of performing a uterine preserving repair vs. hysterectomy vs. post-hysterectomy Prolift Total POP repair.

---

[334] ETH.MESH.00419584
[335] ETH.MESH.PM.000019
[336] ETH.MESH.00419585
[337] ETH.MESH.PM.000019
[338] Hinoul Deposition 4-5, p506-507
[339] Kirkemo Deposition 4-18, p135-135, p150
[340] ETH.MESH.00419584 – 00419585
[341] Hinoul Deposition 4-5, p506-507
[342] Kirkemo Deposition 4-18, p135-135, p150
[343] ETH-49659 (email dated 8-10-2009 from Kirkemo: "A real misconception exists in the community…. We really need to think about how to change our teaching…")

- Recommendations to accurately pass the transobturator trocars blindly into the proper anatomic locations.
- Recommendations regarding the importance of feeding the mesh without twisting through the Prolift Cannula, resulting in preventable complications if this step is incorrectly performed
- Recommendations regarding the crucial importance of proper mesh tensioning, resulting in preventable complications if this step is incorrectly performed.
- Essential need for cystoscopy to rule out inadvertent bladder perforation.

Mesh exposure and bladder injury are common complications, yet there is inadequate guidance in the Surgical Guide on managing these complications.  An absence of a description and guidance in the management of these complications minimizes the frequency and magnitude of these complications to a surgeon.

Dyspareunia, vaginal pain, and pelvic pain are common complications following Prolift POP procedures, yet there is inadequate information in the Surgical Guide explaining the lack of a safe and effective method to treat these complications.  The absence of this information minimizes the frequency and magnitude of these complications to a surgeon.[344][345]

## IX.    FALSE AND MISLEADING STATEMENTS BY ETHICON

### A.  Prolift mesh provides "*long-lasting stabilization of fascial structures of the pelvic floor in vaginal wall prolapse*".[346]

Clinicians reading this statement would reasonably assume that Ethicon possessed evidence from clinical trials that Prolift Pelvic Floor Repair System had demonstrated "long-lasting" effectiveness. However, Ethicon had no such evidence as of March 2005, when marketing of Prolift Pelvic Floor Repair System was initiated.[347][348][349] Ethicon still had no such evidence as of August 2007 to May 2008, when the FDA review of Prolift Pelvic Floor Repair System was ongoing.  In September 2007, Ethicon informed the FDA that "no clinical investigations were conducted on the use of Prolift Pelvic Floor Repair System."[350] Therefore, Ethicon's use of the term "long-lasting" had no factual basis.  By claiming that Prolift produces "stabilization of fascial structures of the pelvic floor in vaginal wall prolapse," Ethicon implies that studies had been performed to directly assess the anatomic and physiologic effect of the Prolift system on the pelvic floor. Clinicians reading such a statement would reasonably and incorrectly assume that studies had demonstrated a direct and beneficial effect of Prolift placement on fascial structures that provide pelvic floor support.  However, Ethicon had no such evidence at the time marketing of Prolift was initiated in March 2005.

---

[344] ETH.MESH.00419571 - ETH.MESH.00419600
[345] ETH.MESH.00067363
[346] ETH.MESH.02589071
[347] Walji Deposition p300, p457,
[348] Gauld Deposition rough 4-26, p200
[349] Hinoul Deposition 4-5, p200
[350] ETH-00929 - 00930

In January 2005, Ethicon's own internal Clinical Expert Report on Prolift stated, "... in vivo forces and exerted strains on pelvic floor repairs during the postoperative period are not known." [351][352][353]  Years after the Prolift was launched, Ethicon scientists still continued to search for answers regarding the estimated pelvic forces and how to develop a mesh that would compensate those forces.  Because the forces on pelvic floor repair were unknown, there would be no way of knowing whether Prolift Pelvic Floor Repair System adequately compensated such forces.  Other internal Ethicon documents confirm their conclusion that a lack of knowledge of pelvic floor forces leads to patient complications and that Prolift mesh was not designed to compensate these forces.[354]

## B.  Prolift Mesh had *"bi-directional elastic property".* [355]

The Gynemesh PS mesh used in the Prolift Pelvic Floor Repair System does not stretch significantly.  This is a direct contradiction to the claim that the Gynemesh PS mesh used in Prolift has elasticity of any kind, bidirectional or otherwise.  Indeed, Ethicon eventually deleted the claim of bidirectional elasticity from the Prolift Pelvic Floor Repair System IFU due to lack of evidence. [356]

By claiming that the Gynemesh PS mesh used in Prolift has bidirectional elasticity, Ethicon implied that studies have been performed to prove that Prolift possesses these elastic design characteristics when used for the surgical treatment of vaginal prolapse.  Clinicians reading such a statement would reasonably and incorrectly assume studies had demonstrated adaptation of the mesh to the stresses normally encountered by the unique movement of the vagina.  Clinicians would reasonably conclude that, by having elastic properties in two directions, the mesh would allow for expansion of the vagina, which normally occurs during sexual activity, permitting comfortable penile penetration and thrusting of vaginal intercourse.  However, Ethicon could produce no such evidence, despite making the claim of bidirectional elastic property of its meshes since 1985 for Mersilene mesh, Prolene Soft mesh, and Gynemesh PS mesh.

Ethicon had no such evidence that Gynemesh PS mesh in Prolift Pelvic Floor Repair System had bidirectional elastic properties at the time the marketing of Prolift was initiated in March 2005.  Ethicon had no such evidence that Gynemesh PS mesh in Prolift had bidirectional elastic properties between August 2007 and May 2008, when the FDA review of Prolift was ongoing. [357][358][359][360]

---

[351] ETH-07156
[352] ETH.MESH.05237872 Mesh Properties – How important are they?
[353] ETH.MESH02227224 Thunder MGPP decision meeting
[354] ETH.MESH.02185584 Biomechanical Considerations for Pelvic Mesh Design; ETH.MESH.03753245 BIOMECHANICS
[355] ETH-00002
[356] ETH-00943
[357] ETH.MESH.00922443 - 00922445
[358] ETH.MESH.00869985
[359] ETH.MESH.00869987
[360] ETH.MESH.02589077 - 02589078

48

The FDA requested that Ethicon either remove the statement or provide evidence to support it.[361] On September 20, 2007, Ethicon admitted that they had no evidence to support the claim that the Gynemesh PS mesh in Prolift had bidirectional elastic properties.[362,363,364] Nevertheless, the baseless claim that Gynemesh PS mesh in Prolift Pelvic Floor Repair System had bidirectional elastic properties remained in the Prolift IFU until 2009.

One of the inventors of the TVM technique as well as a number of other leading scientists and surgeons have attempted to determine the mesh requirements necessary to account for the unique nature of the variability in pelvic and vaginal tissues in terms of elasticity, stretchability, and anisotropy and have been unsuccessful in their studies to adequately define and characterize these parameters in order to define the material characteristics that would properly mimic the pelvic floor environment.[365,366]

## C. Prolift Mesh *"remains soft and pliable"*.

Ethicon's claim that the Gynemesh PS mesh used in Prolift Pelvic Floor Repair System remains soft and pliable postoperatively implies that studies have been performed to document this mesh characteristic when used for the surgical treatment of vaginal wall prolapse.[367,368,369,370,371] Clinicians reading such a statement would reasonably and incorrectly assume studies had been performed, which demonstrated the softness and pliability of the mesh after its placement in the vagina. Clinicians would reasonably conclude that mesh characteristics of softness and pliability would not interfere with sexual function after Prolift placement. However, Ethicon was well aware that mesh contraction occurred to some extent in all cases after Prolift placement. In many cases, mesh contraction occurred to the extent of causing complications, including chronic pain, pain with mesh palpation, vaginal rigidity, and dyspareunia. Ethicon was well aware of mesh contraction because of its experience with Prolene mesh and Prolene Soft mesh used for hernia repair.[372]

In addition, Ethicon had no evidence to support the claim that the Prolift "mesh remains soft and pliable" when used for the surgical treatment of vaginal wall prolapse. Indeed, Ethicon had evidence that directly contradicted the claim that the "mesh remains soft and pliable" from

---

[361] ETH-00943
[362] ETH.MESH.00922443 - 00922445
[363] ETH-00938
[364] ETH.MESH.09656632
[365] Gabriel B, Rubod C, Brieu M, Dedet B, de Landsheere L, Delmas V, Cosson M. Vagina, abdominal skin, and aponeurosis: do they have similar biomechanical properties? Int Urogynecol J. 2011 Jan;22(1):23-7. Epub 2010 Aug 27.)
[366] Cosson M, Lambaudie E, Boukerrou M, Lobry P, Crépin G, Ego A. A biomechanical study of the strength of vaginal tissues. Results on 16 post-menopausal patients presenting with genital prolapse. Eur J Obstet Gynecol Reprod Biol. 2004 Feb 10;112(2):201-5
[367] ETH.MESH.00067357 (Lucente Webinar: "... the things that we all worried about tissue healing and comfort; the 2 things that, again, have plagued us all along using an implant, erosion and discomfort...")
[368] Walji Deposition p471-472
[369] Robinson Deposition 3-14 p683-684
[370] Kirkemo Deposition 4-18, p246-249
[371] Ciarrocca Deposition 3-29, p264-266
[372] ETH-80646

several sources, including physician experts, [373] internal documents related to Prolift + M (known as "Project Lightning") development, [374] and Ethicon-supported animal [375] and clinical studies. [376] Ethicon's French Medical Director, Axel Arnaud, stated that the mesh remaining "soft and pliable" after implantation was "an illusion."[377]

As of these key time periods (2005, 2007), there was abundant evidence in the scientific literature regarding mesh rigidity, contraction, shrinkage, fibrosis due to mesh foreign body reaction leading to lack of tissue in-growth, lack of vascularization, and scar plate formation. The origin of synthetic mesh contraction in the human body and in animal models has definitely shown that no mesh is inert. [378,379,380,381,382,383] This inflammatory reaction causes free radical synthesis, which then causes oxidation and degradation of polypropylene meshes.

Mesh degradation then causes more inflammation and, subsequently, more mesh contraction. When mesh contraction occurs in the abdominal wall or thoracic wall, it causes multiple conditions such as chronic pain, fibrosis, and infection.   Similarly, when synthetic meshes are placed in the vagina for POP procedures, mesh responds the same way.   When vaginal mesh contracts, it causes vaginal fibrosis, infection, chronic vaginal pain, chronic pelvic pain, vaginal shortening, vaginal narrowing, vaginal extrusion, adjacent organ erosion and dyspareunia.

### D.   *"Wound healing is not noticeably impaired"* by Prolift Mesh.

Similar to the Ethicon's claim regarding the softness and pliability of its mesh, it appears that Ethicon lacked evidence regarding wound healing following the surgical implantation of Prolift. As with noted above, in September 2007, Ethicon informed the FDA that "no clinical investigations were conducted on the use of Prolift Pelvic Floor Repair System".[384]   However, there existed abundant evidence in the scientific literature regarding rigidity, contraction, shrinkage, fibrosis due to mesh foreign body reaction leading to lack of tissue in-growth, lack of vascularization, and scar plate formation.   Ethicon's internal documents have meeting minutes from meetings between Ethicon representatives and their key outside consulting experts wherein the concept of a "chronic wound" that is created around the mesh was discussed.[385]   Ethicon was told that the mesh continues to react in the tissues decades after implantation.   So for Ethicon to claim that "wound healing is not noticeably impaired" is absolutely false and misleading given the information they had available to them both before and after the launch of Prolift.

---

[373] ETH-82320
[374] ETH-77061
[375] ETH-60555 – 60556
[376] ETH-77061
[377] Arnaud depo 11/15/12 68:18-69:13
[378] ETH-80641 ("Mesh will contract up to 30%")
[379] ETH-80645 – 80651
[380] Hinoul Deposition 4-5, p 132-134, p147-149
[381] Kirkemo Deposition 4-18, p138, p151-152
[382] Robinson Deposition 3-13, p260
[383] Walji Deposition p465
[384] ETH-00929 - 00930
[385] ETH.MESH.00870466

### E.  The Prolift procedure is *"minimally invasive"*.

As noted above, Ethicon claimed in its patient brochures that the Prolift procedure was a new and revolutionary minimally invasive procedure.  This was inaccurate, and downplayed the invasive nature of the implantation surgery for the Prolift.  In fact, Ethicon's own medical directors described the surgery as a major invasive procedure, yet Ethicon failed to timely correct its labeling.  Ethicon's characterization of the Prolift procedure as minimally invasive is flat wrong, and no doubt falsely reassured doctors and patients.

### F.  Prolift Mesh is not *"subject to degradation"*.

Ethicon states that the mesh contained in the Prolift System is not *"subject to degradation or weakening by the action of tissue enzymes."*[386][387][388]  There is scientific literature, however, which states just the opposite – polypropylene is not biologically inert and is, in fact, subject to oxidation and degradation.  In fact, as stated above in this report, Ethicon's own internal studies and a significant amount of readily available medical literature specifically concludes that polypropylene mesh incites a specific immune response, creating within the vagina a foreign body reaction that directly causes mesh degradation, mesh contraction, fibrosis, vaginal narrowing, pelvic pain, and dyspareunia.[389][390][391]

Despite its own internal studies and numerous peer-reviewed articles regarding degradation, Ethicon failed to change its IFU, its surgical guide, its patient brochures, or its marketing materials to acknowledge that degradation of the polypropylene in the woman's pelvic tissues not only would occur but that it would occur at varying degrees over the life of the implant.

### G.  Prolift Pelvic Floor Repair Systems *"restore normal sexual function"*

Ethicon admits it has no evidence to support claims regarding sexual function after implantation of the Prolift Pelvic Floor Repair Systems.[392][393][394][395][396][397][398]  Nevertheless, at the

---

[386] ETH-01777

[387] ETH.MESH.00570955

[388] ETH.MESH.02589066 - 02589068

[389] Walji Deposition 3-9 p399, p404, p457

[390] Gauld Deposition rough 4-26, p200

[391] Hinoul Deposition 4-5, p200, Hinoul Deposition 4-5, p 132-134, p147-149, Kirkemo Deposition 4-18, p138, p151-152, Robinson Deposition 3-13, p260, Liebert T, Chartoff R, Costgrove S. Subcutaneous Implants of Polypropylene Filaments. J.Biomed. Mater. Res. 1976; 10:939-951, Williams D. Review Biodegradation of surgical polymers. Journal of Materials Science. 1982; 17:1233-1246, Celine Mary, Yves Marois, Martin W. King, Gaetan Laroche, Yvan Douville, Louisette Martin, Robert Guidoin, Comparison of the In Vivo Behaviour of Polyvinylidene Fluoride and Polypropylene Sutures Used in Vascular Surgery, ASAIO Journal, 44 (1998) 199-206, Wood, et al. Materials Characterization and histological analysis of explanted polypropylene, PTFE, and PET hernia meshes from an individual patient. J Mater Sci: Mater med (2013) 24:1113-1122, DEPO.ETH.MESH.00000367, ETH.MESH.09557798, ETH.MESH.15144988, ETH.MESH.00874032, ETH.MESH.07192929, B. Klosterhalfen presentation "What can we learn from explanted meshes?", Depositions of Thomas Barbolt and Daniel Burkley and exhibits thereto

[392] ETH-48281: email from Scott Jones 3-5-2009 "... Apparently, Bos Sci [Boston Scientific] has been talking to doctors about the 'banding' effect that occurs with the anterior Prolift.... The banding that customers are telling me occurs at the edge of the mesh near the apex.  Regardless of how doctors adjust the mesh, there is still a definite ridge or banding that can be vaginally palpated with our anterior mesh.  In fact, during my discussions with Dr. Raul

same time, Ethicon claims in its Patient Information Brochure, "[*The Prolift Pelvic Floor Repair Systems*] *allows for the restoration of sexual function by restoring vaginal anatomy.*"  In fact, as of June 2006, the opposite was shown in a study that demonstrated the number of sexually active patients decreased from 61/90, (68%) at baseline, to 42/90, (47%) at 6 months, and to 40/90, (44%) at 12 months.  One-third of patients who were sexually active before surgery became sexually inactive after mesh surgery. The substantial reduction in the number of sexually active patients strongly suggests that many patients abandoned attempts at sexual activity due to dyspareunia or other complications of mesh surgery. Also, it is critical to note that all results described are short term (less than two years). [399]

As is reported in the literature and as I have seen in my own clinical practice, mesh-specific complications, such as mesh contraction leading to dyspareunia, can be delayed many years following implantation. Therefore, the true frequency of dyspareunia is greatly underestimated. Evidence shows that Ethicon had knowledge of impaired sexual function and dyspareunia, but rather than disclosing this knowledge, Ethicon intentionally chose to not disclose the evidence they had in their possession regarding the full extent of complications of sexual dysfunction. [400 401 402 403 404 405]

## X. ETHICON'S INSTRUCTIONS FOR USE (IFU) AND KNOWN RISKS RELATED TO THE PROLIFT WERE NOT DISCLOSED

At the time of the Prolift launch, Ethicon was fully aware of all the risks associated with the Prolift product.  Ethicon did not fully or adequately disclose the risks, adverse reactions, or the clinical consequences thereof in the Prolift Instructions for Use (IFU) despite Ethicon's internal awareness of these risks (as demonstrated by extensive internal documentation, ETH.MESH.06372356-ETH.MESH.06372363; ETH.MESH.02026591-02026595) and the deposition testimony of its employees:

---

Mendelovici yesterday, he told me that he is so frustrated with the banding effect on the anterior Prolift that he is now modifying his mesh to provide better anterior apical support, and to reduce banding (different modification than Raders or Lucente)... this banding has not been clinically significant for most patients, but the impression in the surgeons eyes is that this is unacceptable, and they will try to avoid this if possible.... ")

[393] ETH-71307 (3 of 14 patients with unresolved symptoms with palpable mesh banding)

[394] ETH-02689 ("surgical release of mesh banding" was necessary for patients with persistent dyspareunia)

[395] ETH-82419 (Summary of meeting points Sexual function June 2006: "Previous history says that we want to avoid this discussion without a solid case for Prolift....")

[396] ETH-01121 June 2006 "...New onset dyspareunia was reported in 7 patients [of 61 patients] at 6 months and in 3 patients at 12 months

[397] ETH-48769 (Email 5-9-2009 addressing Pinnacle competition "...remember that de novo dyspareunia is a post op safety concern")

[398] ETH.MESH.00067357 (Lucente Webinar: "... the things that we all worried about tissue healing and comfort; the 2 things that, again, have plagued us all along using an implant, erosion and discomfort...")

[399] ETH-01121

[400] ETH-80645 - ETH-80651

[401] ETH.MESH.00067363

[402] Walji Deposition 3-8, p398-399, p457

[403] Gauld Deposition rough 4-26, p200

[404] Hinoul Deposition 4-5, p200

[405] Robinson Deposition 3-13 p299

1. Dr. Martin Weisberg
2. Dr. Piet Hinoul,
3. Dr. David Robinson,
4. Dr. Axel Arnaud,
5. Mr. Joerg Holste,
6. Dr. Aaron Kirkemo
7. Jennifer Paine
8. Catherine Beath
9. Ms. Zenobia Walji,
10. Ms. Judy Gauld
11. Dr. Aran Maree
12. Mr. Daniel Smith
13. Mr. Sean O'Bryan
14. Dr. Charlotte Owens
15. Mr. Scott Ciarrocca
16. Dr. James Hart
17. Bryan Lisa
18. Brian Kanerviko
19. Price St. Hilaire
20. Paul Parisi
21. Alex Gorsky
22. Renee Selman
23. Cliff Volpe

Each of the risks, adverse reactions, contraindications, and warnings, and the clinical consequences, should have been clearly placed and stated in the IFU so that the patients' implanting surgeon would be fully informed, and so the patient could have been informed. The following lists inadequacies in the development of the Prolift and the information provided to physicians and patients:

1. Inadequate pre-launch testing and durability studies.
2. Ineffective procedure puts women through extensive surgery with unacceptably high failure rate.
3. Dangerous procedure with incomplete IFU specifications regarding tensioning and appropriate use of trocars thereby leading to complications and failure.
4. Inadequate data to support use of Prolene Soft polypropylene mesh through the Prolift procedure in the Pelvic Floor.

5. Failure to disclose that Prolift complications are not able to be safely and effectively treated in certain patients, including the inability to safely and effectively remove the mesh when necessary, and that the complications can result in chronic, permanent debilitating pain.

6. Inaccurate and misleading claim in the IFU that the inflammatory response is slight and transient, whereas Ethicon has admitted it is chronic and in some patients severe.

53

7. Incomplete warnings regarding the inherent nature of the polypropylene mesh, and that a predictable increased immune response to the presence of the mesh is set off, with an increased risk of product breakdown and failure.

8. Incomplete warnings regarding the significant risks for young and sexually active women, including the failure to include a warning written by Dr. Axel Arnaud for inclusion in the initial IFU because the project leader did not want to take the time or expense to reprint the IFU, and the failure to only indicate the procedure for severe prolapse of at least stage 3 or 4, where the alternatives would not be safe or feasible, consistent with internal documents and the writings of the French inventors of the procedure. In fact, Dr. Hinoul's report in 2012 regarding the procedure indicates that the Prolift is not indicated for a patient who does not fit the criteria to be an appropriate candidate.

9. That Prolift mesh causes a lifelong risk of vaginal erosion/extrusion.

10. That Prolift mesh causes a lifelong risk of pelvic organ erosion.

11. That erosions and extrusions will be severe and incurable in some women.

12. Incomplete warning and pre-launch evaluations regarding the host's acute inflammatory response to Prolift mesh.

13. That the polypropylene mesh used to manufacture Prolift contracts in all patients, and that in some patients, this leads to complications including but not limited to nerve entrapment, pain, chronic pain, recurrence of prolapse, vaginal wall stiffness, vaginal anatomic distortion, erosion, and when this occurs the mesh cannot be safely and effectively revised or removed as necessary, including the body of the implant, and the deep arms which are virtually impossible to safely and effectively treat.

14. Incomplete warning and pre-launch evaluations regarding the risks and consequences of the host's chronic inflammatory response to Prolift polypropylene mesh.

15. That the Prolift mesh pore size is inadequate, especially in actual use, and as a result of tension and strain both during and following implantation causes fibrotic bridging/scar plating and increased contraction, and the consequences thereof.

16. That the polypropylene resins used in the meshes in Prolift have been associated with causing sarcomas at the implantation site.

17. Insufficient evaluation regarding implantation of the Prolift product into the contaminated field of the vagina.

18. Insufficient evaluation regarding Prolift product degradation/product failure due to product degradation.

54

19. Insufficient evaluation and warnings regarding polypropylene-related complications not seen in traditional repair.

20. Insufficient evaluation regarding and warning regarding long-term hypersensitivity to polypropylene mesh.

21. That Ethicon knew of data that the risk and consequences of vaginal scarring was greater than it disclosed in its IFU.

It is my opinion to a reasonable degree of medical probability that the Prolift is defective due to Ethicon's failure to adequately design and test the product prior to launch, failure to properly evaluate and act in response to adverse event reports and informal communications from surgeons notifying Ethicon of catastrophic complications and the failure to appropriately warn patients and health care providers of the range, severity and magnitude of the risks and complications, and consequences thereof, including, but not limited to, the following:

a. The mesh will degrade, fragment, and elongate in some patients;

b. The risk of chronic, refractory infections resulting from the fact that the mesh will potentiate infection (contrary to the professional education and marketing documents);

c. The complications and consequences due to the chronic foreign body reaction due to the presence of the product;

d. The risk of permanent vaginal or pelvic scarring as a result of the interaction with the host;

e. The risk and consequences of vaginal extrusion;

f. The risk of permanent vaginal shortening as a result of the product;

g. The risk of intractable pelvic, vaginal, urethral, and systemic pain resulting from the product's interaction with the body;

h. The need for corrective or revision surgery to revise or attempt to remove the product, which cannot be safely or effectively achieved in many instances;

i. The severity of complications such as pelvic pain, vaginal pain, dyspareunia, overactive bladder, urinary retention and other symptoms and conditions, voiding pain that could arise as a result of implantation of the product;

j. That the Prolift causes permanent mesh based dyspareunia;

k. That the Prolift causes permanent pelvic pain;

55

l.  That the Prolift causes narrowing of the vaginal vault.

m.  The frequency of complications that result from implantation of the product;

n.  Folding, wrinkling, and bunching of the mesh inside the body, increasing the risk of contraction and other complications;

o.  Treatment of pelvic organ prolapse is no more effective than feasible available alternatives such as colporrhaphy;

p.  Treatment of pelvic organ prolapse with the Prolift procedure exposes patients to greater, and medically unreasonable risks than feasible available alternative procedures;

q.  Treatment of pelvic organ prolapse with the Prolift makes future surgical repair more difficult than the feasible available alternative procedures;

r.  The use of the Prolift procedure puts the patients at greater risk of requiring additional and morbid surgery;

s.  The removal of the products due to complications may involve multiple surgeries, significantly impair the patient's quality of life, and ultimately not successfully treat the condition;

t.  Complete removal of the products is most likely not possible and may not result in resolution of the complications, including but not limited to pain, contraction and scarring and recurrent urinary leakage and pelvic organ prolapse;

u.  Insufficient evaluation regarding and warning regarding the pullout forces of the polypropylene arms;

v.  Insufficient evaluation regarding and warning regarding the pullout forces of polypropylene arms if the mesh were to be adjusted (pulled back and forth) during the mesh tensioning portion of the procedure;

w.  Insufficient evaluation regarding and warning regarding the mesh anchoring configuration and "rolling potential" once in place in the body and muscle and fascia;

x.  Insufficient evaluation regarding, warning and IFU guidance for, polypropylene mesh placement in morbidly obese patients.

56

It is my opinion to a reasonable degree of medical probability that Ethicon did not fully disclose the above risks and those discussed in this report, in its IFU and to surgeons and thereby denied the patient the right to full information about her surgery. This is true despite the information being readily available and known to Ethicon about these risks, which predate the launch of the device

## XI.   Statement of Opinions

My opinions are based on my personal knowledge, experience, and my investigation in this case. All of my opinions, and the basis of these opinions, are true and correct to the best of my knowledge and belief, including those related to scientific and medical issues, which I believe are true and correct to a reasonable degree of scientific and medical probability.

A.  Lack of Clinical Benefit:

1. Patients implanted with non-absorbable, transvaginal synthetic mesh for pelvic organ prolapse, including Prolift Pelvic Floor System, do not have improvement in symptomatic results over traditional, non-mesh repair.

2. Patients implanted with non-absorbable, transvaginal synthetic mesh for pelvic organ prolapse, including Prolift Pelvic Floor System, do not have improvement in or quality of life (QOL) over traditional, non-mesh repair.

3. Patients implanted with non-absorbable, transvaginal synthetic mesh for pelvic organ prolapse, including Prolift Pelvic Floor System, do not have improvement reoperation rate over traditional, non-mesh repair.

4. Because of the lack of benefit of Prolift Pelvic Floor System, the increased patient risks, complications, and added expense of these products far outweigh any stated or implied benefit.

5. There was no need for Prolift Pelvic Floor System, a non-absorbable, synthetic mesh, to be sold and marketed as a surgical treatment and procedure for pelvic organ prolapse (POP) as there were safe, effective and reasonable alternative surgical treatments available at the time this product was launched that did not needlessly endanger patients nor carry the likelihood or risk of serious injury that the Prolift product did.

B. Complication Rate:

1. Synthetic transvaginal meshes for POP, including Prolift Pelvic Floor System, subject patients to needless danger through increased risks not present in traditional, non-mesh surgery for POP repair. Prolift has, therefore, caused serious and potentially permanent injuries due to complications associated with its implantation for POP repair.

57

2. Based on the information that was easily and readily available and abundant in the scientific literature, as well as the information known by Ethicon at the time it launched Prolift Pelvic Floor Repair Systems in 2005, a reasonably prudent and publicly responsible manufacturer should have never put this product on the market knowing that it would be permanently implanted into the pelvic region of female patients.

3. Even when surgeons used the Prolift Pelvic Floor Repair Systems as designed and marketed, it was unsafe to patients for its intended use as a method of surgical POP repair because of patient-to-patient anatomic variability and surgeon-to-surgeon variability in experience, training and technique.

4. Because non-absorbable, synthetic, polypropylene mesh such as Prolift causes an intense foreign body reaction in pelvic tissue, there is no way to safely implant these products into a woman's pelvic tissue without an increased risk of serious complications including, but not limited to, pain associated with the implant procedure (nerve and tissue damage), chronic pelvic pain associated with fibrosis and scarring, chronic infection associated with, among other things, the product's implantation into a clean/contaminated field and the intense inflammatory response to the polypropylene, chronic wound healing issues, organ erosion, vaginal extrusion/exposure, chronic pelvic pain associated with the explant procedure (nerve and tissue damage) , de novo incontinence, and significant dyspareunia (painful intercourse).

C. Data Withheld From Physicians:

1. Ethicon, the manufacturer of Prolift Pelvic Floor Repair Systems, knowingly failed to completely disclose the known risks of prolapse surgery using Prolift to physicians and patients.  By withholding this information and failing to provide adequate warnings and/or instructions, Ethicon failed to act as a reasonably prudent manufacturer, and  knowingly exposed patients to needless, preventable danger, harm and permanent suffering.

2. Ethicon failed to disclose the lack of benefit of POP surgery using Prolift Pelvic Floor Repair Systems to physicians and patients.  By withholding this information and failing to provide adequate warnings and/or instructions, Ethicon knowingly failed to act as a reasonably prudent manufacturer and thereby exposed patients to needless danger and harm.

3. For reasons that only served to harm women and lure physicians into a false belief that Prolift Pelvic Floor Repair Systems only helped to improve sexual activity, Ethicon elected to not disclose the increased risks to sexually active women, and not to include a statement regarding the possibility of Prolift POP surgery to cause "pain with intercourse and pelvic pain", and as a result, countless women were,

58

and will be, permanently and needlessly forced to suffer lifelong pain and embarrassment in part due to this decision to withhold essential information.

D.  Breach of Duty by Ethicon:

1.  Ethicon breached its duty of reasonable care to implanting surgeons and to patients by marketing and selling Prolift Pelvic Floor Repair Systems as a new surgical device _and_ procedure with insufficient evidence of either the product's or the procedure's safety, effectiveness and benefit despite knowing the risks of non-absorbable, synthetic surgical mesh for POP, including its product, Prolift.

2.  Ethicon breached its duty of reasonable care to implanting surgeons and to patients by marketing and selling Prolift Pelvic Floor Repair Systems (both the product _and_ the procedure) to surgeons and patients without proper warnings, without proper instructions for use and without sufficient evidence of its safety and efficacy, thereby exposing them to needless danger and unreasonable risk of harm.

3.  Ethicon breached its duty of reasonable care to implanting surgeons and to patients by failing to disclose its knowledge of a significant increase in complications associated with Prolift through physician communications, "Dear Surgeon" letters, its sales force, sales and marketing brochures to physicians and patients and/or updates to its Instructions for Use to physicians.

4.  Ethicon breached its duty of reasonable care by knowingly and falsely marketing Gynemesh PS to physicians as if the product was specially designed for treatment of POP while its intended and documented design was for abdominal wall hernia and "other fascial defects."

## XII.  PREVIOUS TESTIMONY

On November 21, 2015, my trial deposition testimony was given in _Patricia L. Hammons v. Ethicon, Inc., et al.;_. All of my opinions and testimony contained within that transcript are incorporated herein by reference and attached as Exhibit "C". Additionally, as noted in Section XI below, I have given testimony and provided expert reports in numerous Ethicon transvaginal mesh cases over the past few years. All of my testimony and opinions therein are hereby incorporated by reference.

I reserve the right to modify these opinions as necessary based upon any new or additional information or data that I may obtain or with which I am presented including, without limitation, any materials that I produce in response to Ethicon's requests.

## XIII.  EXHIBITS

Exhibit "A" contains a copy of my current Curriculum Vitae.

All materials that have been available to me to consider in support of my finding and opinions are included above and listed below in Exhibit "B".

59

November 21, 2015 Bene Esse Transcript attached as Exhibit "C"

*Patricia L. Hammons v. Ethicon, Inc., et al.;* Philadelphia County Court of Common Please Case No. 0003913 – Report attached as Exhibit "D"

*Linda Gross et al. v. Gynecare, et al.*; Superior Court of New Jersey Law Division – Middlesex County Case No. MID-L-9131-08– Reports attached as Exhibit "E"

*Linda Gross et al. v. Gynecare, et al.*; Superior Court of New Jersey Law Division – Middlesex County Case No. MID-L-9131-08– Deposition attached as Exhibit "F"

*Diane Bellew v. Ethicon et al.*; United States District Court, Southern District of West Virginia Case No. 2:12-cv-22473 – Reports attached as Exhibit "G"

*Diane Bellew v. Ethicon et al.*; United States District Court, Southern District of West Virginia Case No. 2:12-cv-22473 –Deposition attached as Exhibit "H"

*Diane Bellew v. Ethicon et al.*; United States District Court, Southern District of West Virginia Case No. 2:12-cv-22473 –Trial testimony attached as Exhibit "I"

*Dale Watkins et al. vs. Ethicon, Inc. et al.;* Superior Court of New Jersey Law Division – Bergen County Case No. BER-L-13787-14 MCL – Report attached as Exhibit "J"

*Dale Watkins et al. vs. Ethicon, Inc. et al.;* Superior Court of New Jersey Law Division – Bergen County Case No. BER-L-13787-14 MCL –Deposition attached as Exhibit "K"

*Mullins et al v. Ethicon, Inc., et al.;* Southern District of West Virginia Charleston Division Case No. 2:12-cv-02952 – Report attached as Exhibit "L"

*Mullins et al v. Ethicon, Inc., et al.;* Southern District of West Virginia Charleston Division Case No. 2:12-cv-02952 – Deposition attached as Exhibit "M"

Powerpoint Presentation used during Hammons de bene esse testimony attached as Exhibit "N"

## XIV.  RECENT TESTIMONY

*Coloplast A/S v. Generical Medical Devices;* United States District Court – Western District of Washington at Tacoma Case No. C10-227BHS

*Linda Gross et al. v. Gynecare, et al.*; Superior Court of New Jersey Law Division – Middlesex County Case No. MID-L-9131-08– Report & Deposition

*Diane Bellew v. Ethicon et al.*; United States District Court, Southern District of West Virginia Case No. 2:12-cv-22473 – Report, Deposition & Trial

*Janice L. St. Cyr v. C.R. Bard, Inc. et al.;* United States District Court, Southern District of West Virginia Case No. 2:14-cv-02313

*Kathleen Stanbrough v. C.R. Bard, Inc. et al.;* United States District Court, Southern District of West Virginia Case No. 2:14-cv-06937

*Sheila Sutton v. C.R. Bard, Inc. et al.;* United States District Court, Southern District of West Virginia Case No. 2:14-cv-00105

*Pamela Ailey v Cook Medical, Inc., et al.*; United States District Court, Southern District of West Virginia Case No. 2:13-CV-20496

*Patricia L. Hammons v. Ethicon, Inc., et al.;* Philadelphia County Court of Common Please Case No. 0003913 – Report & De Bene Esse

*Dale Watkins et al. vs. Ethicon, Inc. et al.;* Superior Court of New Jersey Law Division – Bergen County Case No. BER-L-13787-14 MCL – Report & Deposition

*Mullins et al v. Ethicon, Inc., et al.;* Southern District of West Virginia Charleston Division Case No. 2:12-cv-02952 – Report & Deposition

## XV.   COMPENSATION

I am compensated for investigation, study and consultation in the case at the rate of $700.00 per hour.

DATE:

_____

Daniel Elliott, M.D