## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MICHELLE A. GEERY,

      Plaintiff,

v.                                                                  Case No. 6:20-cv-1975-RBD-LRH

ETHICON, INC.; and JOHNSON &
JOHNSON,

      Defendants.

_____

## ORDER

The parties each filed omnibus *Daubert* motions. (Doc. 123 ("Plaintiff's Motion"); Doc. 129 ("Defendants' Motion").) Each side responded. (Docs. 131, 136.) On review, both motions are granted in part.

## BACKGROUND

This case was transferred here from multi-district litigation ("MDL") 2327. (Doc. 72; *see, e.g.*, Doc. 57.) In May 2006, Plaintiff underwent an operation performed by Dr. Virgil Davila to implant two medical devices manufactured and sold by Defendant Ethicon, Inc. ("Ethicon"), the Prolift and the TVT-O.[1] (Doc. 57-2, ¶ 7; Doc. 134-4, ¶ 2.) Plaintiff alleges she suffered injuries from defects in these

---

[1] Ethicon is a wholly owned subsidiary of Defendant Johnson & Johnson. (Doc. 57-3, ¶ 4.)

-1-

two medical devices. (Doc. 1; Doc. 92, p. 1.)

In the MDL, the parties filed *Daubert* motions and this Court adopted the MDL Court's orders. (*See* Docs. 92, 100.) But the parties were each given leave to file a single motion *in limine* for any issues not addressed in the MDL. (Doc. 100, p. 1.)

Plaintiff moves to exclude certain opinions from three of Defendants' experts: Drs. Stephen Factor, Jaime Sepulveda-Toro, and Christina Pramudji. (Doc. 123.) Defendants move to exclude opinions from four of Plaintiff's experts: Drs. Bruce Rosenzweig, Paul Michaels, Daniel Elliott, and Uwe Klinge. (Doc. 129.) Briefing complete (Docs. 131, 136), the matter is ripe.

## STANDARDS

With expert testimony, a district court is tasked with a gatekeeping role. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). Expert testimony may only be admitted into evidence if: (1) "the expert is qualified to testify"; (2) "the methodology by which the expert reaches [their] conclusions is sufficiently reliable"; and (3) "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* (cleaned up); *see also* Fed. R. Evid. 702.

The proponent of the expert opinion must establish admissibility. *See*

-2-

*Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010). But the proponent need not prove that the opinion is scientifically correct, just that it is reliable and helpful. *See Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1279 (M.D. Fla. 2002) (citation omitted). The court's limited gatekeeping role "is not intended to supplant" presentation of contrary evidence or cross-examination. *See United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (quotation marks and citation omitted).

## ANALYSIS

The Court begins with Plaintiff's Motion.

### I. Dr. Steven Factor

Dr. Factor is an anatomical pathologist. (Doc. 131-1, p. 4.) Plaintiff moves to exclude his general mesh opinions. (Doc. 123, pp. 4–9.) The MDL Court reserved ruling on this issue because it was not clear Dr. Factor would be making general mesh opinions. (Doc. 70-12, p. 6.) Defendants now confirm "Dr. Factor does not seek to opine generally about mesh design or biomaterials." (Doc. 131, p. 4.) So Plaintiff's Motion in this respect is denied as moot.

### II. Dr. Jaime Sepulveda-Toro

Dr. Sepulveda-Toro is an obstetrician and gynecologist. (Doc. 123-5, p. 4.) Plaintiff moves to exclude four topics from his expert opinion. (Doc. 123, pp. 9–16.)

### A.    FDA Notices

First, Plaintiff contends Dr. Sepulveda-Toro should not be able to testify whether surgeons knew or should have known about the Food and Drug Administration's 2008 and 2013 Public Health Notices on mesh. (Doc. 123, pp. 10–11.) Plaintiff argues this opinion would be pure speculation. (*Id.*) Defendants respond that Dr. Sepulveda-Toro can opine on the knowledge of the medical community generally, based on his experience as a surgeon and instructor. (Doc. 131, pp. 7–8.) The Court agrees. While Dr. Sepulveda-Toro cannot opine on what specific individuals knew, he is qualified to testify on "the knowledge of the medical community in general." *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, 2018 WL 4220671, at *5 (S.D.W. Va. Sept. 5, 2018); *Warren v. C.R. Bard, Inc.*, No. 8:19-cv-2657-T-60JSS, 2020 WL 1899838, at *3 (M.D. Fla. Apr. 17, 2020). So Plaintiff's Motion is denied in this respect.

### B.    Brochures

Second, Plaintiff argues Dr. Sepulveda-Toro's opinions on the adequacy of Ethicon's brochures are speculative. (Doc. 123, pp. 11–12.) Defendants respond Dr. Sepulveda-Toro will not be opining on the adequacy of the brochures so Plaintiff's Motion on this matter is denied as moot. (*See* Doc. 131, p. 9.)

### C.    Medical Literature

Third, Plaintiff says Dr. Sepulveda-Toro should not be able to opine on the

safety of Ethicon's products because he misrepresents the medical and scientific literature. (Doc. 123, pp. 12–15.) The MDL Court held Dr. Sepulveda-Toro could opine on the safety and efficacy of Ethicon's products, so to the extent Plaintiff reargues this issue, her Motion is denied. (*See* Doc. 70-15, p. 6.) But the MDL Court reserved ruling on whether Dr. Sepulveda-Toro's characterization of the medical literature was reliable. (*Id.* at 9–10.) Dr. Sepulveda-Toro opines,

> The medical literature including over 100 Gynemesh PS studies, meta-analyses and systematic reviews do not support that the mesh is cytotoxic, that it degrades or leads to a harmful inflammatory response in humans.
> . . .
> The medical literature including over 1,000 studies, meta-analyses and systematic reviews, and the endorsement of the TVT mesh by the pertinent medical societies do not support that the mesh is cytotoxic, that it degrades or leads to a harmful inflammatory response in humans.

(Doc. 123-5, p. 23; Doc. 123-6, p. 30.)

Plaintiff notes these statements are not supported by citations to the studies, so the accuracy of Dr. Sepulveda-Toro's characterization cannot be verified. (Doc. 123, p. 13.) But Dr. Sepulveda-Toro provided a list of the medical literature he relied on. (Doc. 131-7, pp. 3–54.) And he explained in his report, "I have researched and regularly read the medical and scientific literature concerning prolapse and its treatment, including the mechanism, efficacy and safety of abdominal and transvaginal mesh." (Doc. 123-5, p. 6.)

As Dr. Sepulveda-Toro provided an extensive list of medical literature and

explained he has regularly reviewed the literature through his practice, he may opine on the general number of studies he contends support his opinion. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 WL 765019, at *16 (N.D. Fla. Feb. 28, 2021).

### D.   Design

Last, Plaintiff seeks to preclude Dr. Sepulveda-Toro from opining on the adequacy of the design of Defendants' products, arguing he is not qualified. (Doc. 123, pp. 15–16.) The MDL Court already determined Dr. Sepulveda-Toro had expressed no opinions about designing a product and merely using the word "design" did not transform his opinion into one of design adequacy. (Doc. 70-15, pp. 6–7.) So Plaintiff's Motion on this matter is denied.

### III.   Dr. Christina Pramudji

Dr. Pramudji is a urologist with a subspeciality in pelvic floor medicine. (Doc. 123-9, p. 4.) Plaintiff argues Dr. Pramudji should not be able opine on mesh degradation beyond what she observed in her clinical practice. (Doc. 123, pp. 17–20.) The Court agrees.

Dr. Pramudji opines, "[t]he data" does not support that mesh degrades or that if it does, to a clinically significant effect, and she has "not seen evidence of mesh degradation in [her] clinical practice." (Doc. 123-9, p. 5; Doc. 123-10, p. 6.) But she does not cite to the relevant "data" and concedes unfamiliarity with

polypropylene's chemical processes. (Doc. 123-9, p. 5; Doc. 123-10, p. 6; Doc. 123-11, pp. 133:7–134:13.) While Dr. Pramudji may testify about her own clinical experience regarding mesh degradation, she has not provided a reliable basis to opine generally on mesh degradation in the larger population. *See Arevalo v. Coloplast Corp.*, No. 3:19cv3577-TKW-MJF, 2020 WL 3958505, at *19 (N.D. Fla. July 7, 2020); *Husky v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 726–27 (S.D.W. Va. 2014). So Plaintiff's Motion on Dr. Pramudji is granted.

Now the Court turns to Defendants' Motion.

## IV.    Dr. Bruce Rosenzweig

Dr. Rosenzweig is a urogynecologist and professor of obstetrics and gynecology. (Doc. 129-1, p. 2.) Defendants argue he should be precluded from opining on seven topics. (Doc. 129, pp. 2–12.)

### A.    Prolift

First, Defendants move to exclude Dr. Rosenzweig's general opinions on the Prolift. (Doc. 129, p. 2.) Plaintiff responds Dr. Rosenzweig will not be providing general opinions on the Prolift, so Defendants' Motion in this regard is denied as moot. (*See* Doc. 136, p. 13.)

### B.    Product Characteristics

Second, Defendants move to exclude Dr. Rosenzweig's opinions on the characteristics of the products as irrelevant and unreliable. (Doc. 129, pp. 3–4.) Dr.

Rosenzweig opines Plaintiff's Prolift and TVT-O sustained deformation, fraying, and curling. (Doc. 136-18, p. 18.)

Defendants argue the opinion is irrelevant because there is no evidence Plaintiff's mesh suffered from these conditions. (Doc. 129, pp. 3–4.) Not so. Dr. Michaels, Plaintiff's pathologist, observed mesh degradation in Plaintiff's tissue samples. (Doc. 136-16, pp. 8–10, 55–63*); see Tucker v. Ethicon, Inc.*, No. 4:20-CV-1543 RWL, 2021 WL 825921, at *6 (E.D. Mo. Mar. 4, 2021); *Russell v. Ethicon Inc.*, No. 4:20-cv-00752-ACA, 2020 WL 4732106, at *4 (N.D. Ala. Aug. 14, 2020); *cf. Huskey v. Ethicon*, 29 F. Supp. 3d 691, 707 (S.D.W. Va. 2014).

Defendants also argue Dr. Rosenzweig's methodology is unreliable because he does not connect general causation opinions about the mesh to Plaintiff's specific injuries. (Doc. 129, pp. 3–4.) Based on his review of Plaintiff's medical records, his extensive experience with pelvic surgeries, and his review of the scientific literature, Dr. Rosenzweig opines that Plaintiff's injuries resulted from complications with the mesh. (Doc. 136-18, pp. 2–4, 26–27.) In both his report and deposition, he shows an extensive familiarity with Plaintiff's medical history and explains in great detail why he attributes Plaintiff's injuries to the mesh. (*See* Doc. 136-18, pp. 16–27; see, e.g., Doc. 138-1, pp. 23–40.) For example, he observed Plaintiff's treating physicians reproduced Plaintiff's pain by palpating the mesh devices and conducted a broad differential diagnosis review of Plaintiff's medical

history. (Doc. 136-18, pp. 16–17.) As Dr. Rosenzweig's opinion is both relevant and reliable, Defendants' Motion on this matter is denied. *See Messina v. Ethicon, Inc.*, No. 6:20-cv-1170-Orl-40LRH, 2020 WL 7419586, at *4–5 (M.D. Fla. Dec. 17, 2020).[2]

### C.    Dr. Davila's Knowledge

Third, Defendants argue Dr. Rosenzweig should not be able to opine on Dr. Davila's knowledge as this is speculative and unhelpful to the jury. (Doc. 129, pp. 4–5.) Dr. Rosenzweig cannot opine on what Dr. Davila, Plaintiff's implanting surgeon, knew or did not know. *See In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, 2018 WL 4220671, at *5 (S.D.W. Va. Sept. 5, 2018). But he does not do so. Dr. Rosenzweig opines Dr. Davila could not pass information on to Plaintiff that was never disclosed or obtain proper informed consent about the risks associated with the Prolift and TVT-O devices. (*See* Doc. 136-18, p. 21.) This opinion falls squarely in the category the MDL Court deemed admissible— whether Instructions for Use adequately warned physicians of risks. (Doc. 70-10, p. 8.) So Defendants' Motion in this respect is denied.

### D.    Medical Bills

Fourth, Defendants argue Dr. Rosenzweig should not be able to opine on

---

[2] *See also Bell v. Ethicon Inc.*, No. 4:20-CV-3678, 2021 WL 1111071, at *9–10 (S.D. Tex. Mar. 23, 2021); *Humleker v. Bos. Sci. Corp.*, No. 6:19-cv-121-Orl-31EJK, 2020 WL 6870852, at *5–8 (M.D. Fla. Oct. 2, 2020); *Dorgan v. Ethicon, Inc.*, No. 4:20-00529-CV-RK, 2020 WL 5367062, at *3 (W.D. Mo. Sept. 8, 2020).

the reasonableness of Plaintiff's medical bills because prices vary nationally and Dr. Rosenzweig has not practiced outside Chicago in twenty years. (Doc. 129, pp. 5–6.) But Defendants' arguments go to the weight, not the admissibility of Dr. Rosenzweig's opinion. *See Cosmo v. Carnival Corp.*, No. 16-22933-CIV-SCOLA/OTAZO-REYES, 2017 WL 4785639, at *4 (S.D. Fla. Oct. 16, 2017). Dr. Rosenzweig can rely on his extensive experience performing pelvic floor surgical procedures to evaluate the reasonableness and necessity of Plaintiff's medical bills. *See id.*; (Doc. 136-18, pp. 2–3.) So Defendants' Motion is denied on this matter.

### E.    TVT-O Cut

Fifth, Defendants seek to preclude Dr. Rosenzweig from opining on how the TVT-O was cut because: (1) he criticizes both methods of cutting mesh (laser and mechanically); and (2) he does not cite to any studies about a safer alternative method for cutting so his opinion is unreliable. (Doc. 129, pp. 6–7.)

In his general report, Dr. Rosenzweig notes complications with both mechanical and laser-cut mesh—mechanically-cut mesh frays and deforms while laser-cut mesh is stiff and rigid. (*See* Doc. 129-1, p. 12.) But finding issues with both methods does not make his opinion unreliable. *See Laderbush v. Ethicon*, No. 20-cv-62-JD, 2020 WL 3001958, at *2 (D.N.H. June 4, 2020); *Herrera v. Nevarez by Springer v. Ethicon, Inc.*, No. 17 C 3930, 2017 WL 3381718, at *8 (N.D. Ill. Aug. 6, 2017). And Dr. Rosenzweig did not need to cite a study that an alternative method would be

safer when he does not offer such an opinion and his opinions about the methods of cutting mesh are supported by citations to studies and based on his experience. (*See, e.g.*, Doc. 129-1, pp. 12–13, 36, 39, 44); *see Laderbush*, 2020 WL 3001958, at *2. So Defendants' Motion on this issue is denied.

### F.   Manufacturer's Duties

Sixth, Defendants contend Dr. Rosenzweig should be precluded from opining on the duties owed by a manufacturer—specifically, adverse event reporting and physician training. (Doc. 129, pp. 7–8.) Plaintiff responds Dr. Rosenzweig will not be offering an opinion on adverse reporting, so Defendants' Motion on that issue is denied as moot. (Doc. 136, p. 14.)

As to physician training, Defendants point to Dr. Rosenzweig's criticism of the level of funding provided to train physicians by Ethicon and argue this opinion is irrelevant because no one contends Dr. Davila was not properly trained. (Doc. 129, p. 8.) Plaintiff responds in a one-sentence footnote, asking the Court to reserve the issue for trial where relevance can be determined. (Doc. 136, p. 12 n.44.) But absent some showing that Ethicon's training is relevant to this case, the Court precludes Dr. Rosenzweig's opinion on physician training. *See Daubert*, 509 U.S. at 590. Should the relevance of physician training come up in trial, Plaintiff can move to revisit the issue.

-11-

### G.     Alternative Procedures

Last, Defendants argue Dr. Rosenzweig's opinions on alternative surgeries that do not use polypropylene mesh are irrelevant. (Doc. 129, pp. 8–12.) The MDL Court reserved ruling on this issue, stating relevance "is better decided on a case-by-case basis." (Doc. 70-10, p. 6.)

Dr. Rosenzweig opines the use of sutures in a colposuspension procedure or native tissue repair, autologous slings, and allograft sings lead to fewer complications than the TVT-O and Prolift. (*See* Doc. 129-1, pp. 7–10, 109–10; Doc. 136-18, p. 25.) Because these are surgical procedures rather than medical devices, Defendants argue they are not safer alternative designs to the TVT-O and Prolift, so Dr. Rosenzweig's opinions on them are irrelevant. (Doc. 129, p. 9.) Plaintiff responds that in Florida,[3] she need not provide evidence of a safer alternative design for her strict liability design defect claim, and the safety of the alternative procedures is relevant. (Doc. 136, pp. 1–3.) Plaintiff is correct.

In Florida, a plaintiff need not demonstrate the existence of a reasonable alternative design for a strict liability design defect claim. *Aubin v. Union Carbid Corp.*, 177 So. 3d 489, 511 (Fla. 2015). In proving strict liability, Florida courts use

---

[3] This Court is sitting in diversity jurisdiction, so it applies state substantive law. *See Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009). The parties agree Florida law applies to Plaintiff's substantive claims as Plaintiff is a Florida resident who received relevant medical care in Florida. (*See* Doc. 121, pp. 2, 7–8; Doc. 134, pp. 7–8.)

both the consumer expectations test and the risk utility test. *See id.* at 512; *Messina*, 2020 WL 7419586, at *4. Under the consumer expectation test, a product is defectively designed if it fails to perform as safely as the ordinary consumer would expect. *Pierre v. Intuitive Surgical, Inc.*, 476 F. Supp. 3d 1260, 1270 (S.D. Fla. 2020). And under the risk utility test, a "product is considered unreasonably dangerous" when "the risk of danger in the design outweighs the benefits." *Id.* at 1271.

Dr. Rosenzweig's opinions are relevant to the risk utility test because it will assist the jury in determining whether the risks of the TVT-O and Prolift outweighed the benefits, given the safety of alternative medical procedures. *See Messina v. Ethicon, Inc.*, No. 6:20-cv-1170-Orl-40LRH, 2020 WL 7419586, at *4 (M.D. Fla. Dec. 17, 2020); *Ellerbee v. Ethicon, Inc.*, No. 8:20-cv-1514-T-60AEP, 2020 WL 4815818, at *3 (M.D. Fla. Aug. 19, 2020). Defendants' Motion on this matter is denied.

## V.    Dr. Paul Michaels

Dr. Michaels is a pathologist. (Doc. 129-4, p. 2.) Defendants move to exclude two topics from his opinions. (Doc. 129, pp. 13–24.)

### A.    Alternative Mesh

First, Defendants argue Dr. Michaels should not be able to opine on alternative mesh designs because he did not use a reliable methodology. (Doc. 129, pp. 13–16.) In his general report, Dr. Michaels explains mesh made of absorbable

-13-

material and mesh with larger pore sizes have better incorporation into surrounding tissue than mesh with non-absorbable material and smaller pore sizes. (Doc. 129-4, pp. 3–4.) He cites to numerous studies to support his opinions. (*See id.*)

Still, Defendants argue Dr. Michaels' opinion is unreliable because he did not conduct the testing himself. (Doc. 129, p. 13.) Dr. Michaels need not conduct the testing when he bases his opinion on his experience and the medical literature. *See Katsiafas v. C.R. Bard, Inc.*, No. 2:19-cv-822-FtM-60MRM, 2020 WL 1808895, at *3 (M.D. Fla. Apr. 9, 2020). Defendants also argue Dr. Michaels' opinion should be excluded as unreliable because he does not identify a clinical study proving an alternative mesh would be safer and still effective to treat SUI or POP. (Doc. 129, p. 13.) But Dr. Michaels describes, with citations in support, how a pathological response to synthetic grafts depends on the properties of the graft, such as mesh absorbability, pore size, and weight. (Doc. 129-4, pp. 3–4.) And he testified that, based on the medical literature, lightweight large pore meshes have lower complication rates. (Doc. 136-3, pp. 323:15–324:6.) So Defendants' Motion on this issue is denied. *See Williams v. Ethicon, Inc.*, No. 5:20-CV-234 (MTT), 2021 WL 1087808, at *7 (M.D. Ga. Mar. 22, 2021).

## B. Specific Causation

Second, Defendants argue Dr. Michaels' opinion on specific medical

causation is unreliable because he did not use a scientific control and did not consider alternative causes of Plaintiff's symptoms. (Doc. 129, pp. 16–24.) Dr. Michaels reviewed eight microscopic slides containing tissue specimen removed from Plaintiff. (Doc. 129-5, p. 8.) Based on his evaluation of the tissue specimen, his experience as a diagnostic anatomic pathologist, his general opinion, and his review of the literature, internal documents, and Plaintiff's medical records, Dr. Michaels opines Plaintiff's vaginal pain, pelvic pain, and dyspareunia resulted directly from mesh-related complications. (Doc. 129-5, pp. 2–3, 64.) This is a sufficiently reliable basis to opine on specific causation, even absent a control. *See Tucker v. Ethicon, Inc.*, No. 4:20-CV-1543 RLW, 2021 WL 825921, at *3–4 (E.D. Mo. Mar. 4, 2021); *Townsend v. Ethicon, Inc.*, No. 2:20-cv-01984-APG-DJA, 2021 WL 304555, at *1–2 (D. Nev. Jan. 29, 2021). So Defendants' Motion on Dr. Michaels is denied.

## VI.   Dr. Daniel Elliott

Dr. Elliott is a pelvic surgeon and professor of urology. (Doc. 136-12, p. 2.) Defendants contend four matters should be precluded from his opinions. (Doc. 129, pp. 24–35.)

### A.   Recent Literature

First, Defendants say Dr. Elliott's opinion that the TVT-O is unsafe to treat SUI is directly contradicted by his recently published literature. (Doc. 129, pp. 24–

26.)

An expert should not apply different standards of intellectual rigor to a peer-reviewed article than in an opinion for litigation. *See Wilkerson v. Boston Sci. Corp.*, No. 2015 WL 2087048, 2015 WL 208704, at *15 (S.D.W. Va. May 5, 2015). But after carefully reviewing Dr. Elliott's general report on the TVT-O and his 2019 article on synthetic mid-urethral slings, the Court does not find the two expressly contradictory. (*See* Doc. 129-22; *cf.* Doc. 129-23.)

In his general report, Dr. Elliott opines "synthetic meshes that are low-weight, large-pore size, high porosity, monofilament, and capable of maintaining their elasticity under load will have the better results with fewer complications." (Doc. 129-22, p. 14.) He says the TVT-O mesh should not be used in the pelvic floor because it is heavy weight, small pore, and cut in a way that makes it more dangerous. (*Id.* at 18.) These opinions are consistent with the 2019 article Dr. Elliott co-authored in which he says the qualities of the mesh material determine the body's reaction—"the ideal mesh is large pore" and smaller pore meshes are associated with "high rates of mesh exposure and infection." (Doc. 129-23, p. 4.) While the 2019 article is fodder for cross-examination, it does not render Dr. Elliott's general opinion on the TVT-O unreliable.

Further, inconsistencies properly go to the weight a jury should give the evidence, not its admissibility. *See Daubert*, 509 U.S. at 596. So Defendant's Motion

on this aspect is denied.

### B.    Manufacturer's Duties

Second, Defendants argue Dr. Elliott is not qualified to opine on the duties of a medical device manufacturer, including research and testing, training, and adverse event reporting. (Doc. 129, pp. 27–30.) Plaintiff says Dr. Elliott "simply points out" when "Ethicon did not conduct testing" to show why he did not rely on Ethicon data in supporting his opinion. (Doc. 136, p. 11.) But Dr. Elliott does more than that—he opines Ethicon failed to conduct appropriate studies. (*See, e.g.*, Doc. 129-22, pp. 44–45.) But Plaintiff does not explain how Dr. Elliott is qualified to form this opinion. (*See* Doc. 136, p. 11.) So Dr. Elliott will be precluded from opining on what research and testing Ethicon should have done.[4] *See Salinero v. Johnson & Johnson*, No. 1:18-cv-23643-UU, 2019 WL 7753453, at *4 (S.D. Fla. Sept. 5, 2019).

Dr. Elliott also opines Ethicon provided inadequate Prolift surgical training. (Doc. 129-24, pp. 43–48.) As discussed with Dr. Rosenzweig, it does not appear physician training is relevant. *See supra* Section IV.F. So Dr. Elliott's opinions on physician training are precluded. Plaintiff can ask to revisit the issue if relevance

---

[4] This does not prevent Dr. Elliott from noting when studies were not conducted by Ethicon. *See Williams v. Ethicon, Inc.*, No. 5:20-CV-234 (MTT), 2021 WL 1087808, at *6 (M.D. Ga. Mar. 22, 2021).

is determined at trial.

And Dr. Elliott opines Ethicon failed to "properly evaluate and act in response to adverse event reports." (Doc. 129-24, p. 56.) Plaintiff contends as a surgeon, Dr. Elliott can discuss the impact on surgeons of not being informed of certain adverse events. (Doc. 136, p. 12.) True, but he also opines on how Ethicon should have responded to adverse events—which he is not qualified to do. (*See* Doc. 129-24, p. 56); *see Walker v. Ethicon, Inc.*, No. 12-cv-1801, 2017 WL 2992301, at *6 (N.D. Ill. June 22, 2017). So Defendants' Motion is granted in part; Dr. Elliott is precluded from opining on how Ethicon should have responded to adverse reports.[5]

### C.    Alternative Procedures

As with Dr. Rosenzweig, Defendants argue Dr. Elliott's opinions on alternative procedures that do not involve non-synthetic mesh are irrelevant. (Doc. 129, pp. 30–31.) For the same reasons stated previously, Dr. Elliott's opinions on these alternative medical procedures are relevant and will not be excluded on that basis. *See supra* Section IV.G.

Defendants also argue Dr. Elliott's opinions on these alternative medical procedures are unreliable because he ignored or improperly discounted

---

[5] This does not preclude Dr. Elliott from stating facts, such as not being told by Ethicon of certain adverse reactions.

contradictory literature. (Doc. 129, pp. 31–34.) The Court is not persuaded.

Based on his clinical experience and his review of the medical literature, Dr. Elliott opines these alternative procedures would have been safer because they would have reduced various risks associated with polypropylene mesh, such as fibrotic bridging and mesh degradation (Doc. 129-22, pp. 6–8, 40.) In his deposition, Dr. Elliott discusses the literature he relied on. (*See, e.g.*, Doc. 129-25, pp. 54:1–24, 192:20–193:19, 166:2–8.) He acknowledged contrary literature and explained why it was insufficient to change his opinion. (*See, e.g.*, Doc. 129-25, pp. 111:11–25, 118:9–10, 22–25.) Defendants' arguments challenging Dr. Elliott's professional assessment of the literature go the weight of his opinion, not admissibility. *See Hovey v. Cook, Inc.*, No. 2:13-cv-18900, 2015 WL 1405565, at *10 (S.D.W. Va. Mar. 26, 2015). So Defendants' Motion on this issue is denied. *See Williams v. Ethicon, Inc.*, No. 5:20-CV-234 (MTT), 2021 WL 1087808, at *4–5 (M.D. Ga. Mar. 22, 2021).

### D.    Alternative Mesh

Last, Defendants say Dr. Elliott should not be able to opine that a device with a different type of mesh would be a safer alternative to the Prolift or TVT-O because his opinion is unreliable. (Doc. 129, pp. 34–35.) Dr. Elliott opines "that synthetic meshes that are low-weight, large pore size, high porosity, monofilament, and capable of maintaining their elasticity under load will have the

better results with fewer complications." (Doc. 129-22, p. 14.)

Defendants argue Dr. Elliott's only basis for this opinion is his personal experience. (Doc. 129, pp. 34–35.) But this is not true—he cites to numerous studies in support. (*See, e.g.*, Doc. 129-22, pp. 16–23; Doc. 129-24, p. 9.) Defendants also argue Dr. Elliott's opinion is unreliable because he has conducted no studies. (Doc. 129, p. 35.) But again, this is not a requirement.

Finally, Defendants argue Dr. Elliott cites no literature that alternative meshes would be safer and still effective at treating POP. (Doc. 129, p. 35.) But Dr. Elliott cites to numerous studies when describing how shorter, lighter weight, large pore mesh has fewer complications, leading to his conclusion that a mesh with these properties would have been safer. (*See* Doc. 129-22, pp. 16–23, 40.) So Defendants' Motion on Dr. Elliott's alternative mesh opinion is denied. *See Williams v. Ethicon, Inc.*, No. 5:20-CV-234 (MTT), 2021 WL 1087808, at *7 (M.D. Ga. Mar. 22, 2021).

### VII.   Dr. Uwe Klinge

The last expert, Dr. Klinge, is a former hernia surgeon. (Doc. 129-32, p. 2.) Defendants argue he should not able to opine that the Ultrapro mesh is a safer alternative design because this opinion is speculative. (Doc. 129, pp. 36–40.)

Dr. Klinge explains in his report, with citations to studies, his opinion that a greater surface area and shorter distance between fibers increases "the foreign

body reaction and the inflammatory response." (Doc. 129-31, pp. 3, 10–16, 37.) So Dr. Klinge's opinion that the Ultrapro mesh is a safer alternative to the TVT-O because of its characteristics is not speculative. *See Williams v. Ethicon, Inc.*, No. 5:20-CV-234 (MTT), 2021 WL 1087808, at *4–5 (M.D. Ga. Mar. 22, 2021); *Laderbush v. Ethicon, Inc.*, No. 20-cv-62-JD, 2020 WL 3000981, at *2 (D.N.H. June 4, 2020).

Defendants also argue Dr. Klinge's opinion that the Ultrapro mesh is safer than the mesh used in the Prolift is speculative. (Doc. 129, pp. 39–40.) But Dr. Klinge does not render this opinion. (*See* Doc. 129-32; Doc. 129-35, pp. 90:8–91:3) So Defendants' Motion as to Dr. Klinge is denied.

## CONCLUSION

It is **ORDERED AND ADJUDGED**:

1. Plaintiff's Omnibus Daubert Motion (Doc. 123) is **GRANTED IN PART AND DENIED IN PART:**

   a. Dr. Pramudji is **PRECLUDED** from opining on mesh degradation beyond what she observed in her clinical practice;

   b. In all other respects, Plaintiff's Motion is **DENIED**.

2. Defendants' Motion to Exclude Certain Opinions of Plaintiff's General and Case-Specific Experts (Doc. 129) is **GRANTED IN PART AND DENIED IN PART:**

  **a.**  Dr. Rosenzweig is **PRECLUDED** from opining on the adequacy of Ethicon's training of physicians;

  **b.**  Dr. Elliott is **PRECLUDED** from opining on a medical device manufacturer's duties, including research and testing, physician training, and adverse event reporting;

  **c.**  In all other respects, Defendants' Motion is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 9, 2021.

ROY B. DALTON JR.
United States District Judge